# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DANA FEDOR, AND ALL OTHERS
SIMILARLY SITUATED,

        Plaintiff,

vs.

UNITEDHEALTHCARE, INC., and UNITED
HEALTHCARE SERVICES, INC.,

        Defendants.

Docket No. 1:17-cv-13-LF/KBM

## MOTION TO DISMISS, STRIKE CLASS AND COLLECTIVE ACTION CLAIMS, AND COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, Defendants UnitedHealthcare, Inc. and United HealthCare Services, Inc.[1] (collectively "United Healthcare") hereby move the Court to enforce the parties' arbitration agreement as written, and therefore, (1) dismiss this action; (2) strike the class and collective claims, and (3) compel Plaintiff Dana Fedor[2] and opt-in Plaintiffs Susan Davis, Donah E. Davison, Juliana J. Whitesell, Cindy L. Hays, Michelle Rios Rice, Ann Beauchamp, Bill Snyder, and Lisa Salopek[3] to individually arbitrate their claims, if at all. In the alternative, United Healthcare moves to stay this proceeding pending the

---

[1] Both UnitedHealthcare, Inc. and United HealthCare Services, Inc. are subsidiaries of UnitedHealth Group Incorporated. (Declaration of Christopher Sprau ("Sprau Decl.") ¶ 1.)

[2] United Healthcare has no record of a current or former employee named Dana Fedor. (Sprau Decl. ¶ 5.) Its search did find a former employee named Donna M. Fedor, whose job title, location, and work history are consistent with the allegations in the complaint. (Sprau Decl. ¶¶ 5-8; *see also* FAC ¶¶ 1-3, 16.) Thus, for purposes of this Motion, United Healthcare will assume that former employee Donna M. Fedor is the named Plaintiff in this action.

[3] Because no class or collective has been certified in this matter, nor would a class or collective action be appropriate here, Davis, Davison, Whitesell, Hays, Rice, Beauchamp, Snyder, and Salopek are putative opt-in plaintiffs to this action. For the ease of reference the putative opt-in plaintiffs and Plaintiff Fedor shall be collectively referred to herein as "Plaintiffs."

United States Supreme Court's ruling in *Ernst & Young LLP v. Morris*, 137 S.Ct. 809 (Jan. 13, 2017) (mem).

## I.     INTRODUCTION

Plaintiff Fedor's recent class and collective action was filed with this Court in direct violation of an enforceable arbitration agreement and class and collective waiver between her and United Healthcare, as were the subsequently filed Consents from putative opt-in plaintiffs Davis, Davison, Whitesell, Hays, Rice, Beauchamp, Snyder, and Salopek.  At the beginning of their employment with United Healthcare, each Plaintiff signed United Healthcare's Employment Arbitration Policy, and they further signaled their acceptance of that policy by their continued employment with United Healthcare.  The Arbitration Policy requires Plaintiffs to submit any disputes related to their employment, including any disputes regarding compensation, to binding arbitration.  Notably, the Arbitration Policy also expressly prohibits class and collective adjudication of disputes.  Despite the unequivocal language of the Policy on this point, Plaintiffs filed and joined this class and collective action and continue to refuse to arbitrate their claims.

The Supreme Court strongly endorses the enforcement of arbitration agreements, emphasizing that "courts must rigorously enforce arbitration agreements according to their terms . . . including terms that specify with whom the parties choose to arbitrate their disputes . . . and the rules under which that arbitration will be conducted."  *Am. Express v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) (internal citations and quotations omitted).  Because Plaintiffs and United Healthcare are parties to a valid arbitration agreement covering this dispute, pursuant to controlling Supreme Court precedent Plaintiffs are required to arbitrate their claims in accordance with the terms of that arbitration agreement.

Therefore, United Healthcare respectfully asks this Court to dismiss Plaintiffs' claims,

strike Plaintiffs' collective action claims, and compel individual arbitration of Plaintiffs' claims in accordance with the express terms of the Arbitration Policy. *See* 9 U.S.C. § 4.

## II.    STATEMENT OF FACTS

### A.    United Healthcare's Arbitration Policy Was Presented to Plaintiffs, Who Acknowledged They Understood and Agreed to It.

In the offer letter to each plaintiff, United Healthcare included a copy of its Arbitration Policy, and specifically highlighted the nature and effect of the Arbitration Policy. Under the clear heading "**What UnitedHealth Group Needs From You**" and the subheading "**Conditions of Your Employment with UnitedHealth Group**," each offer letter provided:

> Included with this letter is UnitedHealth Group's Employment Arbitration Policy. This Policy is a binding contract between you and UnitedHealth Group to resolve through arbitration all employment-related disputes that are based on a legal claim, and mutually waive the right to a trial before a judge or jury in court in favor of final and binding arbitration. Your agreement to be bound by the terms of the Policy is a condition of your employment. Once you are on board, you will be required to electronically acknowledge in Employee Self Service your understanding of the Policy.

(Sprau Decl. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q.) Then, as a condition of employment, each plaintiff agreed to and executed a material similar arbitration policy. (Sprau Decl. ¶¶ 7, 10, 13, 16, 19, 22, 25, 28, 31, Exs. B, D, F, H, J, L, N, P, R.)

### 1.    Plaintiff Fedor Signed and Acknowledged the Arbitration Policy.

United HealthCare has no record of any current or former employee named Dana Fedor, but its records demonstrate that Donna M. Fedor worked as a Care Coordinator in New Mexico until on or about November 25, 2016. (Sprau Decl. ¶¶ 5, 6-8; *see also* FAC ¶¶ 1-3, 16.) On or about September 12, 2013, United Healthcare provided Donna M. Fedor an offer letter for her employment at United Healthcare. (Sprau Decl. ¶ 6, Ex. A.) In the offer letter, United Healthcare provided a copy of its Arbitration Policy and informed Fedor that she would be

required to agree to the Policy once she was on board.  (*Id.*).  On November 11, 2013, Fedor executed the Arbitration Policy, which provided that employment-related disputes must be arbitrated on an individual basis. (*Id.*, Ex. B.)  Fedor worked for United Healthcare until on or about November 25, 2016, when she voluntarily resigned.  (*Id.* at 8; *see also* FAC ¶ 16.)

### 2. Opt-In Plaintiff Susan Davis Signed and Acknowledged the Arbitration Policy.

On or about April 1, 2009, United Healthcare provided putative opt-in plaintiff Davis an offer letter for her employment at United Healthcare.  (Sprau Decl. ¶ 9, Ex. C.)  In the offer letter, United Healthcare provided a copy of its Arbitration Policy and informed Davis that she would be required to agree to the Policy once she was on board.  (*Id.*)  On April 15, 2009, putative opt-in plaintiff Davis executed the Arbitration Policy, which provided that employment-related disputes must be arbitrated on an individual basis.  (*Id.* ¶ 10, Ex. D.)  Putative opt-in plaintiff Davis worked for United Healthcare until on or about November 17, 2016, when she voluntarily resigned.  (*Id.* ¶ 11.)

### 3. Opt-In Plaintiff Donah E. Davison Signed and Acknowledged the Arbitration Policy.

On or about August 20, 2013, United Healthcare provided putative opt-in plaintiff Davison an offer letter for her employment at United Healthcare.  (Sprau Decl. ¶ 12, Ex. E.)  In the offer letter, United Healthcare provided a copy of its Arbitration Policy and informed Davison that she would be required to agree to the Policy once she was on board.  (*Id.*).  On November 11, 2013, putative opt-in plaintiff Davison executed the Arbitration Policy, which provided that employment-related disputes must be arbitrated on an individual basis.  (*Id.* ¶ 13, Ex. F.)  Putative opt-in plaintiff Davison worked for United Healthcare until on or about January 15, 2016, when her employment was terminated.  (*Id.* ¶ 14.)

### 4. Opt-In Plaintiff Juliana J. Whitesell Signed and Acknowledged the Arbitration Policy.

On or about October 16, 2014, United Healthcare provided putative opt-in plaintiff Whitesell an offer letter for her employment at United Healthcare. (Sprau Decl. ¶ 15, Ex. G.) In the offer letter, United Healthcare provided a copy of its Arbitration Policy and informed Whitesell that she would be required to agree to the Policy once she was on board. (*Id.*). On November 3, 2014, putative opt-in plaintiff Whitesell executed the Arbitration Policy, which provided that employment-related dispute**s** must be arbitrated on an individual basis**.** (*Id.* ¶ 16, Ex. H.) Putative opt-in plaintiff Whitesell worked for United Healthcare until on or about April 14, 2017, when she voluntarily resigned. (*Id.* ¶ 17.)

### 5. Opt-In Plaintiff Cindy L. Hays Signed and Acknowledged the Arbitration Policy.

On or about January 2, 2015, United Healthcare provided putative opt-in plaintiff Hays an offer letter for her employment at United Healthcare. (Sprau Decl. ¶ 18, Ex. I.) In the offer letter, United Healthcare provided a copy of its Arbitration Policy and informed Hays that she would be required to agree to the Policy once she was on board. (*Id.*) On January 12, 2015, putative opt-in plaintiff Hays executed the Arbitration Policy, which provided that employment-related dispute**s** must be arbitrated on an individual basis**.** (*Id.* ¶ 19, Ex. J.) Putative opt-in plaintiff Hays worked for United Healthcare until on or about May 19, 2017, when she voluntarily resigned. (*Id.* ¶ 20.)

### 6. Opt-In Plaintiff Michelle Rios Rice Signed and Acknowledged the Arbitration Policy.

On or about June 10, 2015, United Healthcare provided putative opt-in plaintiff Rice an offer letter for her employment at United Healthcare. (Sprau Decl. ¶ 21, Ex. K.) In the offer letter, United Healthcare provided a copy of its Arbitration Policy and informed Rice that she

would be required to agree to the Policy once she was on board.  (*Id.*)  On July 6, 2015, putative opt-in plaintiff Rice executed the Arbitration Policy, which provided that employment-related disputes must be arbitrated on an individual basis**.** (*Id.* ¶ 22, Ex. L.)  Putative opt-in plaintiff Rice worked for United Healthcare until on or about August 31, 2016, when her employment was terminated.  (*Id.* ¶ 23.)

### 7. Opt-In Plaintiff Ann Beauchamp Signed and Acknowledged the Arbitration Policy.

On or about August 23, 2011, United Healthcare provided putative opt-in plaintiff Beauchamp an offer letter for her employment at United Healthcare.  (Sprau Decl. ¶ 24, Ex. M.) In the offer letter, United Healthcare provided a copy of its Arbitration Policy and informed Beauchamp that she would be required to agree to the Policy once she was on board.  (*Id.*)  On September 1, 2011, putative opt-in plaintiff Beauchamp executed the Arbitration Policy, which provided that employment-related disputes must be arbitrated on an individual basis**.** (*Id.* ¶ 25, Ex. N.)  Putative opt-in plaintiff Beauchamp worked for United Healthcare until on or about April 2, 2017, when she voluntarily resigned.  (*Id.* ¶ 26.)

### 8. Opt-In Plaintiff Bill Snyder Signed and Acknowledged the Arbitration Policy.

On or about October 3, 2012, United Healthcare provided putative opt-in plaintiff Snyder an offer letter for his employment at United Healthcare.  (Sprau Decl. ¶ 27, Ex. O.)  In the offer letter, United Healthcare provided a copy of its Arbitration Policy and informed Snyder that he would be required to agree to the Policy once she was on board.  (*Id.*)  On November 5, 2012, putative opt-in plaintiff Snyder executed the Arbitration Policy, which provided that employment-related disputes must be arbitrated on an individual basis**.** (*Id.* ¶ 28, Ex. P.)  Putative opt-in plaintiff Snyder worked for United Healthcare until on or about March 10, 2017, when he voluntarily resigned.  (*Id.* ¶ 29.)

### 9. Opt-In Plaintiff Lisa Salopek Signed and Acknowledged the Arbitration Policy.

On or about September 10, 2013, United Healthcare provided putative opt-in plaintiff Salopek an offer letter for her employment at United Healthcare. (Sprau Decl. ¶ 30, Ex. Q.) In the offer letter, United Healthcare provided a copy of its Arbitration Policy and informed Salopek that she would be required to agree to the Policy once she was on board. (*Id.*) On October 28, 2013, putative opt-in plaintiff Salopek executed the Arbitration Policy, which provided that employment-related dispute**s** must be arbitrated on an individual basis**.** (*Id.* ¶ 31, Ex. R.) Putative opt-in plaintiff Salopek worked for United Healthcare until on or about April 17, 2016, when she voluntarily resigned. (*Id.* ¶ 32.)

### B. The Arbitration Policy Is Governed by the Federal Arbitration Act and It Covers the Employment-Related Disputes at Issue Here.

United Healthcare periodically revises its Arbitration Policy, and on January 1, 2016, United Healthcare issued the current Arbitration Policy, which is substantially similar to the previous versions ("Arbitration Policy"). (*See id.* ¶ 33, Ex. S.) Paragraph A in the Arbitration Policy contains the following language:

> This Policy is a binding contract between UnitedHealth Group and its employee. ***Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy***.[4]

(*Id.*, Ex. S at § A) (emphasis in original). Because each Plaintiff continued working after being informed of the 2016 Arbitration Policy, this is the agreement that governs Plaintiffs' claims.

Paragraph B of the governing Arbitration Policy sets forth the broad scope of arbitrable claims:

---

[4] This exact language was in the 2006 Arbitration Policy, which was executed by Plaintiff Fedor, and putative opt-in plaintiffs Davis, Davison, Beauchamp, Snyder, and Salopek; the 2012 Arbitration Policy, which was executed by putative opt-in plaintiff Whitesell; and the 2015 Arbitration Policy, which was executed by putative opt-in plaintiff Hays and Rice. (Sprau Dec. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q at § A.)

> This Policy creates a contract between UnitedHealth Group and employees ***requiring both parties to resolve most employment-related disputes*** (excluded disputes are listed below) that are based on a legal claim ***through final and binding arbitration***. ***Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the Policy.***
>
> ***UnitedHealth Group and employee mutually consent to the resolution by arbitration of all claims and controversies,*** past, present, or future, that employee may have against UnitedHealth Group or UnitedHealth Group may have against employee, ***which arise out of or relate to employee's employment,*** application for employment, and/or termination of employment.
> . . .
>
> ***. . . [T]he claims covered by the Policy include, but are not limited to: . . . claims for wages or other compensation due (including but not limited to, minimum wage, overtime, meal and rest breaks, waiting time penalties, vacation pay and pay on separation); . . .and claims for violation of any federal, state . . . law [or] statute.***[5]

(Sprau Decl, Ex. S at § B) (emphasis added).

Finally, Paragraph D of the governing Arbitration Policy makes clear that the agreement is governed by the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA Rules").[6] (Sprau Decl., Ex. S at § D).

### C. The Arbitration Policy Expressly Precludes Class Claims.

The Arbitration Policy expressly precludes class and collective actions, like the one Plaintiff Fedor purports to bring here:

### C. CLASS AND REPRESENTATIVE ACTION WAIVERS

> ***There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or in a***

---

[5] The scope of covered claims was substantially the same in the 2006, 2012, and 2015 Arbitration Policies, which also provided that they covered "most employment-related disputes," including "a claim under any federal, state, or local statute . . . or common law doctrine regarding or relating to . . . terms and conditions of employment . . ., including but not limited to . . . the Fair Labor Standards Act." (Sprau Dec. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q at § B.)

[6] The 2006, 2012, and 2015 versions also provide that the AAA Rules apply. (Sprau Dec. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q at § C.)

> *representative capacity on behalf of any other person. Nor shall the Arbitrator have any authority to hear or arbitrate any such dispute.* Accordingly,
>
> > 1. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action ("Class Action Wavier"). The Class Action Waiver shall not be severable from this Policy in any case in which (1) the dispute is filed as a class or collective action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances, the class action must be litigated in a civil court of competent jurisdiction . . . .
> >
> > > . . .
> >
> > Regardless of anything else in this Policy and/or any rules or procedures that might otherwise be applicable by virtue of this Policy or by virtue of any arbitration organization rules or procedures that now apply or any amendments and/or modifications to those rules, the interpretation, enforceability, applicability, unconscionability or formation of the class Action Wavier . . . may be determined only by a court and not by an arbitrator.[7]

(Sprau Decl., Ex. S at § C.)

**D.      Plaintiffs Have Brought this Statewide Class and Collective Action, Refusing United Healthcare's Demand to Arbitrate Their Claims on An Individual Basis.**

Despite agreeing to arbitrate on an individual basis any disputes related to her employment, on January 7, 2017, Plaintiff filed an original complaint against Defendant UnitedHealthcare, Inc., asserting class and collective claims on behalf of herself and those similarly situated, including: (1) Violations of the Fair Labor Standards Act ("FLSA") and (2) Violations of the New Mexico Wage Law.  [*See* Dkt. 1.]  At the same time, Plaintiff filed her Consent to join the action as a party plaintiff.  [*See* Dkt. 1-1.]  On March 28, 2017, Plaintiff

---

[7] The 2006, 2012, and 2015 Arbitration Policies similarly expressly preclude class and collective claims:  "Any dispute covered by this Policy will be arbitrated on an individual basis. . . .[A]n individual employee [may not] seek to bring his/her dispute on behalf of other employees as a class or collective action."  (Sprau Dec. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q at § B.)

Fedor filed a First-Amended Complaint ("FAC"), asserting the same claims from her original Complaint, but adding United Healthcare Services, Inc. as an additional Defendant. [*See* Dkt. 3.] On May 1, 2017, Plaintiff filed Consents to join the action by putative opt-in plaintiffs Susan Davis and Juliana Whitesell. [Dkt. 9.] On May 5, 2017, Plaintiff filed additional Consents by putative opt-in plaintiff Donah Davison, Cindy Hays, and Michelle Rios Rice. [Dkt. 10.] On May 10, 2017, Plaintiff filed a Consent by putative opt-in plaintiff Ann Beauchamp. [Dkt. 13.] On May 15, 2017, Plaintiff filed a Consent by putative opt-in plaintiff Bill Snyder, and on May 22, 2017, Plaintiff filed an additional Consent by putative opt-in plaintiff Lisa Salopek. [Dkts. 14, 15.]

On May 4, 2017, after previously discussing the matter with opposing counsel, United Healthcare sent copies of Plaintiff's acknowledged arbitration agreement and asked that Plaintiffs stipulate to arbitrate their claims under the Policy. *See* Declaration of Mark Ogden ("Ogden Decl."), ¶ 2. United Healthcare reminded Plaintiffs they had waived any rights they had to bring a class or collective action, and instead, had to resolve their claims on an individual basis through arbitration per the Policy. *See id.* Plaintiffs have refused to stipulate to arbitrating their claims. *See id.* at ¶ 3.

The claims asserted by Plaintiff in her First-Amended Complaint all fall within the scope of the Arbitration Policy to which Plaintiffs agreed. Therefore, because the Arbitration Policy (a) covers all of Plaintiffs' claims for relief, (b) precludes class and collective claims, and (c) requires the Court to enforce the Class Action Waiver, Plaintiffs must be compelled to individually arbitrate their claims.

## III.    ARGUMENT

### A.    The Federal Arbitration Act Governs Plaintiffs' Claims.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to agreements

"involving commerce." 9 U.S.C. § 2. The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Moreover, under the Supremacy Clause, U.S. Const. art. VI, cl. 2, the FAA preempts all otherwise applicable or conflicting state laws. *Preston v. Ferrer*, 552 U.S. 346, 356-57 (2008); *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it."); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting Section 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration.").

In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the U.S. Supreme Court reaffirmed the long line of cases upholding arbitration in the employment context. The *Rent-A-Center* court emphasized the core concept that arbitration agreements be "***enforce[d] according to their terms***." *Id.* at 67 (emphasis added). Therefore, where an arbitration agreement governed by the FAA covers a dispute, the resolution of that dispute is exclusively committed to the arbitral forum.

Here, the Arbitration Policy is an agreement involving interstate commerce. Specifically, United Healthcare and its related companies provide health and insurance products to individuals, small to mid-sized businesses, and large multi-site employers throughout the United States, including New Mexico. (Sprau Decl. ¶ 2.) United Healthcare also offers Medicare and

Medicaid health coverage, as well as employer group plans for employers through the United States. (*Id.*) United Healthcare's activities "affect commerce" and the Arbitration Policy is covered by the FAA.

**B.    Federal Law Mandates Arbitration of Plaintiffs' Claims.**

The FAA was enacted "in response to widespread judicial hostility to arbitration." *Italian Colors Restaurant*, 133 S. Ct. at 2308-09 (citing *Concepcion*, 563 U.S. at 339). Accordingly, the FAA's "principal purpose . . . is to ensure that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 344. Section 2 of the FAA provides, in relevant part, that "[a] written provision in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (internal citations and quotations omitted).

"In line with these principles, courts must place arbitration agreements on an equal footing with other contracts" and "enforce them according to their terms." *Id.* (internal citations and quotations omitted). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). When considering whether a contrary congressional command is present, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Significantly, the party opposing arbitration bears the burden of proving that Congress intended to preclude arbitration of the claims asserted. *Id.*

It is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration *as quickly and easily as possible*." *Moses H. Cone Mem'l Hosp. v Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (emphasis added). Under the FAA, an arbitration agreement must be enforced, as written, where a valid, written agreement exists and the claims made are within the scope of the agreement. *Byrd*, 470 U.S. at 217, 221. Any doubts are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

### C. The Arbitration Policy is Valid and Enforceable and Covers the Claims at Issue in This Case.

In determining whether to grant a motion to compel arbitration, the Court's inquiry is limited to deciding: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). There is a strong presumption in favor of arbitration, and any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014). Here, United Healthcare easily meets their minimal burden to compel arbitration.

### 1. The Arbitration Policy Is Valid under New Mexico Contract Law.

New Mexico state law governing contract formation applies in determining whether Plaintiffs and United Healthcare entered into a valid and enforceable agreement to arbitrate disputes arising from Plaintiffs' employment. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under New Mexico law, a legally enforceable contract requires the existence of an offer, an acceptance, consideration and mutual assent. *Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 15, 302 P.3d 751, 775 (N.M. Ct. App. 2013). Consideration is a promise to do something that a party is under no obligation to do or to forbear from doing something it has a

legal right to do.  *Id.*  Under New Mexico law, courts have found that arbitration clauses in employment contracts are supported by consideration when the promise to arbitrate is mutual. *Luginbuhl*, 302 P.3d at 775-76.  Moreover, it is a fundamental tenet of contract law "that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby."  *Ballard v. Chavez*, 1994-NMSC-007, ¶ 8, 868 P.2d 646, 648 (N.M. 1994).

Here, the Arbitration Policy is a valid contract.  United Healthcare presented a substantially similar Arbitration Policy to each Plaintiff at the time they were hired. (Sprau Decl. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q.)  Each Plaintiff agreed to the provisions at least twice: they expressly indicated their agreement to the Policy with their signature, and they impliedly indicated their agreement with their continued employment. (*See* Sprau Decl. ¶¶ 7, 10, 13, 16, 19, 22, 25, 28, 31, Exs. B, D, F, H, J, L, N, P, R.)  *See* 15 U.S.C. § 7001(a); *Stieber v. Journal Pub. Co.*, 1995-NMCA-068, 120 N.M. 270, 273, 901 P.2d 201, 204 (N.M. Ct. App. 1995).  And in the Arbitration Policy, Plaintiffs and United Healthcare mutually agreed to arbitrate disputes.  *Luginbuhl*, 302 P.3d at 775-76.  Therefore, the Arbitration Policy is a valid contract.

### 2. The Arbitration Policy Covers Plaintiffs' Claims.

Plaintiffs bear the burden of proving that their claims do not fall within the scope of the Arbitration Policy.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.") (internal citations omitted).  In determining whether a claim falls within the scope of an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Indeed, arbitration should not be denied "unless it can be said with positive assurance that [the] arbitration clause is

not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Here, the Arbitration Policy expressly covers the claims asserted in the Complaint. Specifically, the Arbitration Policy broadly covers "employment-related disputes."[8] (Sprau Decl. ¶ 33, Ex. S at § B.)  It also specifically includes any "claims for wages or other compensation due (including but not limited to, minimum wage, overtime, meal and rest breaks, waiting time penalties, vacation pay and pay on separation); . . .and claims for violation of any federal, state . . . law [or] statute.)  (*Id.*) Therefore, the Arbitration Policy expressly covers Plaintiffs' state and federal statutory claims for wages.

## D.    The Court Should Strike Plaintiffs' Class and Collective Claims.

United Healthcare is entitled to an order compelling Plaintiffs to submit their <u>individual</u> claims to arbitration in accordance with the terms of the Arbitration Policy.  The Arbitration Policy, in addition to requiring Plaintiffs to arbitrate their claims against United Healthcare, expressly prohibits Plaintiffs from pursuing class and collective claims:

> There will be ***no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action***, or in a representative capacity on behalf of any other person.  Nor shall the Arbitrator have any authority to hear or arbitrate any such dispute.  Accordingly, . . . [t]here will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action ("Class Action Wavier").[9]

(Sprau Decl., Ex. S at § C (emphasis added).)

---

[8] There are some narrow exceptions, which are not relevant here.  (Sprau Decl. ¶ 33, Ex. S at § B.) The 2006, 2012, and 2015 Arbitration Policies contain similar broad language.  (*Id.* ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q at § B.)

[9] The 2006, 2012, and 2015 Arbitration Policies similarly preclude class and collective claims: "Any dispute covered by this Policy will be arbitrated on an individual basis. . . .[A]n individual employee [may not] seek to bring his/her dispute on behalf of other employees as a class or collective action."  (Sprau Dec. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q at § B.)

1.      **The Arbitration Policy Is Lawful under the Federal Arbitration Act.**

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center West, Inc. v. Jackson,* 561 U.S. 63, 67 (2010). Section 4 of the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4. Similarly, Section 3 of the FAA authorizes federal courts to stay litigation until the arbitration has been conducted "in accordance with the terms of the [parties' arbitration] agreement. . . ." 9 U.S.C. § 3. Accordingly, the "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis. v. Bd. of Trustees,* 489 U.S. 468, 479 (1989); *see also Italian Colors*, 133 S. Ct. at 2309.

Controlling Supreme Court precedent requires the enforcement of the Class Waiver, and neither this District nor the Tenth Circuit has held to the contrary. In *Concepcion*, the Supreme Court upheld the enforceability of arbitral class waivers in FAA-governed arbitration agreements and reaffirmed the bedrock principle of federal arbitration law—that arbitration agreements are to be enforced *as written*. *See Concepcion*, 563 U.S. at 350-51 (holding the FAA preempted the California Supreme Court's rule restricting enforcement of class action waivers). In reaching its decision, the Supreme Court reasoned that class arbitration was inconsistent with the fundamental attributes of arbitration as contemplated by the FAA, and concluded that California's rule was preempted because it created a scheme inconsistent with the FAA. *Id.* at 348-52.

Similarly, in *Italian Colors*, the Court noted it "had no qualms in enforcing a class waiver in an arbitration agreement" in *Gilmer* "even though the federal statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions." *Italian Colors*, 133 S. Ct. at 2311. Citing its decision in *Concepcion*, the Court reasoned:

> Truth to tell, our decision in *AT&T Mobility* all but resolves this

> case. There we invalidated a law conditioning enforcement of arbitration on the availability of class procedure because that law "interfere[d] with fundamental attributes of arbitration." 563 U.S., at __, 131 S.Ct., at 1748. **"[T]he switch from bilateral to class arbitration," we said, "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.**" *Id.*, at ——, 131 S.Ct., at 1751. We specifically rejected the argument that class arbitration was necessary to prosecute claims "that might otherwise slip through the legal system." *Id.*, at __, 131 S.Ct., at 1753.

*Id.* at 2312 (emphasis added). The Court expressly held that the FAA does not permit courts to invalidate arbitration agreements on the grounds that they do not permit class arbitration of a federal statutory claim. *Id.* at 2308, 2312. Both *Italian Colors* and *Concepcion* apply with equal force in the instant action.[10]

Based on the foregoing, the Court should strike the class action allegations in the FAC. Specifically, United Healthcare requests that the Court strike all class action allegations, including, without limitation, the Preamble (except for Plaintiff as an individual), Paragraphs 2-4 and 23-33 of the FAC, Paragraph (a) under Relief Sought under Rule 23, all references to "Class Action," "Class Action Representative," "Rule 23," "Class Period," more than one "Plaintiff," "Class Members," "putative members of the class," "and those who may join the suit"" or "similarly situated Class Members" in the Complaint, and any references to statutes seeking recovery for anyone other than Plaintiff.

### 2. The Tenth Circuit Has Not Adopted the Reasoning of *Morris*, Which Was Wrongly Decided.

United Healthcare recognizes that in *Morris v. Ernst & Young*, 834 F.3d 975 (2017), the Ninth Circuit found that a class waiver was unenforceable because it violated the employees'

---

[10] Even where an arbitration agreement, unlike the one presented in this case, is silent regarding class arbitration, the Supreme Court has held that it would be improper to force a party into a class proceeding to which it did not agree, because arbitration "is a matter of consent." *Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, 559 U.S. 662, 684, 687 (2010).

right to engage in concerted activity under the National Labor Relations Act ("NLRA"). This is a minority view, however, and it is not binding on this Court. To the contrary, the issue of the enforceability of class waivers in mandatory arbitration agreements has split the Circuits,[11] and the United States Supreme Court has recently granted certiorari in *Morris* and two other cases to resolve whether an arbitration agreement containing a waiver like the one at issue here violates the NLRA. *See NLRB v. Murphy Oil*, 137 S.Ct. 809 (Jan. 13, 2017) (mem); *Epic Systems Corp. v. Lewis*, 137 S.Ct. 809 (Jan. 13, 2017) (mem); *Ernst & Young LLP v. Morris*, 137 S.Ct. 809 (Jan. 13, 2017) (mem).

While neither the courts of this District nor the Tenth Circuit have had occasion to rule on this issue, the only district courts within the Tenth Circuit to consider whether mandatory class waivers violate the NLRA have flatly rejected the argument and enforced the class waivers. *See Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1179-1188 (D. Colo. 2016) (rejecting the argument that the mandatory class waiver violated the NLRA and enforcing the class waiver and compelling individual arbitration); *Bell v. Ryan Transportation Serv., Inc.*, 176 F. Supp. 3d 1251, 1261 (D. Kan. 2016) ("The court firmly believes that the Tenth Circuit, if faced with this issue, would similarly reject the Board's decision in *D.R. Horton*."); *see also Tiffany v. KO Huts, Inc.*, 178 F. Supp. 3d 1140, 1144 (W.D. Okla. 2016) (finding that the employer's requirement that its

---

[11] The Second, Fifth, and Eight Circuit Courts of Appeal have enforced mandatory class waivers, rejecting the argument that they violate the NLRA. *See Murphy Oil U.S.A., Inv. V. NLRB*, 808 F.3d 1013, 1020 (5th Cir. 2015); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013); *Cellular Sales of Missouri, LLC v. Nat'l Labor Relations Bd.*, 824 F.3d 772 (8th Cir. 2016). At least two state courts are in accord. *See Tallman v. Eighth Judicial Dist. Court*, 359 P.3d 113, 122-23 (Nev. 2015); *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 359-60 (2014) (enforcing a mandatory class waiver provision in an employment agreement). Only the Seventh Circuit is in accord with *Morris,* finding that a class waiver was unenforceable because it violated the employees' right to engage in concerted activity under the NLRA. *See Lewis v. Epic Systems Corporation*, 823 F.3d 1147 (7th Cir. 2016); *Morris*, 834 F. 3d 975.

employees sign mandatory class or collective action waivers was not "even arguably prohibited by the NLRA").

Indeed, a review of the substantive issues reveals that *Morris* was wrongly decided. There is nothing in the NLRA's plain language or the Act's legislative history that indicates that Section 7 creates a substantive right for employees to bring or participate in class or collective actions. The Supreme Court has held that there is no substantive right to bring a class action, which is "a procedural right only." *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980). Likewise, class actions do not constitute "concerted activity" under Section 7 of the NLRA. *See, e.g., D.R. Horton II,* 737 F. 3d at 356 (5th Cir. 2013). If the NLRA did provide a substantive right to bring a class action, the logically absurd result would be that a court's refusal to certify an employment class action would always constitute an NLRA violation. This is not the law.

Even if "concerted activity" did include the substantive right to bring a class action – which it does not – the Supreme Court has repeatedly held that statutory employment rights to proceed collectively must defer to the FAA, and nothing in the legislative history of the NLRA indicates a congressional command to override application of the FAA. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (ADEA); *CompuCredit Corp. v. Greenwood,* 132 S.Ct. 665, 669 (2012) (reaffirming that arbitration agreements must be enforced "unless the FAA's mandate has been overridden by a contrary congressional command"); *Italian Colors*, 133 S. Ct. at 2309 ("unless the FAA's mandate has been overridden by a contrary congressional command," courts must "rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes"); *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 362 (5th Cir. 2013) In this respect, the

Court has held the National Labor Review Board may not "so single-mindedly" enforce the NLRA such as to ignore other Congressional objectives. *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147-52 (2002).

Thus, this Court should apply Supreme Court precedent and enforce the parties' class and collective waiver and enforce the Arbitration Policy, including the class waiver, and order Plaintiffs to individually arbitrate their claims.

## IV. ALTERNATIVELY, THIS COURT SHOULD STAY THIS PROCEEDING PENDING THE UNITED STATES SUPREME COURT'S RULING

Supreme Court precedent requires an order enforcing the Arbitration Policy, including the Class Waiver, as written, and there is no precedent binding on this Court to the contrary. Nevertheless, if the Court were to have doubts on this issue, United Healthcare requests that the Court stay this action until the Supreme Court issues a decision in *Morris*. As part of its inherent authority to control its docket, a district court is vested with broad discretion to stay proceedings when required in the interests of judicial economy. *Clinton v. Jones*, 520 U.S. 681, 707 (1997); *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). A stay is appropriate in this situation when a pending decision by the Supreme Court will control and resolve issues presented in the action before the district court. See, e.g., *Roman v. Northrop Grumman Corp.*, 2016 U.S. Dist. LEXIS, at *7-8 (N.D. Cal. Dec. 14, 2016) (granting defendant's opposed motion to stay proceedings on motion to compel individual arbitration of class claims pending resolution of *Morris* by U.S. Supreme Court); *U.S. v. Deleon*, 2016 U.S. Dist. LEXIS 99675, at *6-7 (E.D. Cal. July 29, 2016) (stay granted pending Supreme Court decision).

To determine if a stay should be granted, courts must weigh the competing interests of the parties and of the court. Here, if the Court finds that the issue is unsettled, requiring parties

to go forward with litigation—especially collective action litigation[12]—when a pending case before the Supreme Court will dispose of the issue before this Court would be inequitable, cause undue hardship and be a waste of time, resources and money.

If this case were permitted to proceed on a collective basis, United Healthcare would be deprived of its rights under the FAA to enforce its arbitration agreement as written—including the provision requiring individual arbitration—rather than defend against class litigation. Moreover, United Healthcare would be forced to engage in costly class proceedings that will be moot if the Supreme Court reverses *Morris* and the related cases. Tremendous efforts would be undertaken to litigate the issues of conditional certification. In contrast, Plaintiffs will not be prejudiced by a stay of this case. The stay will be short and the issue subject to resolution by the Supreme Court. Moreover, Plaintiffs can still pursue their individual claims in arbitration pursuant to the Arbitration Policy.

## V.    CONCLUSION

The FAA requires that Plaintiffs resolve their claims on an individual basis in binding arbitration pursuant to the Arbitration Policy. Accordingly, United Healthcare respectfully request that this Court issue an order enforcing the parties' Arbitration Policy according to its terms and therefore: (1) dismiss this action; (2) strike the class and collective claims, and (3) compel Plaintiff Fedor and putative opt-in plaintiffs Davis, Davison, Whitesell, Hays, Rice, Beauchamp, Snyder, and Salopek to individually arbitrate their claims, if at all. In the alternative, United Healthcare moves to stay this proceeding pending the United States Supreme

---

[12] As the Supreme Court recognized in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), the mere filing and pursuit of putative class and/or group actions is costly and burdensome to defendants. This logic should apply here as Plaintiffs seek to pursue a statewide class and collective action in court. Defending against such a significant action when waiting a matter of months could result in definitive guidance from the Supreme Court would necessarily subject Defendants to unnecessary hardship.

Court's ruling in *Morris*.

DATED this 26th day of May, 2017.

LITTLER MENDELSON, P.C.

*/s/ Mark Ogden*
Mark Ogden
mogden@littler.com
Cory G. Walker
cgwalker@littler.com
2425 E. Camelback Road
Suite 900
Phoenix, Arizona 85016
602.474.3600 (Telephone)
602.957.1801 (Facsimile)

ATTORNEYS FOR DEFENDANTS

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following if CM/ECF registrants, and emailed a copy of same to any non-registrants this 26th day of May, 2017:

J. Derek Braziel
Jay Forester
LEE & BRAZIEL, L.L.P.
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
*Attorneys for Plaintiff*

*/s/ Mark Ogden*

Firmwide:147495842.3 047515.1352