IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANA FEDOR, AND ALL OTHERS
SIMILARLY SITUATED,

    *Plaintiff*,

v().                                       **Civil Action No.** 1:17-cv-00013-MV-KBM

UNITEDHEALTHCARE, INC., and      **JURY TRIAL DEMANDED**
UNITED HEALTHCARE SERVICES,
INC.,

    *Defendants*.

## PLAINTIFF'S SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS

Named Plaintiff and the Opt-In Plaintiffs (collectively, "Plaintiffs") never formed a valid agreement to arbitrate with Defendants United Healthcare, Inc. and United Healthcare Services, Inc. (collectively, "UHC") because the agreements at issue fail for lack of consideration. The versions of the agreement signed by Plaintiffs fail because they allow UHC to amend its "terms even after a claim accrues and before any proceeding is initiated."[1] It also fails regardless of whether or not UHC agreed to provide continued at-will employment to Plaintiffs because "the majority of courts which have considered the matter have concluded that mere continued employment is not generally sufficient to create consideration for the employer's subsequent imposition of an arbitration requirement."[2]

UHC knows it cannot prove that the agreements **actually** signed by Plaintiffs ("Signed Agreements") are supported by consideration. ECF 16-2, Ex. B, D, F, H, J, L, N, P, R. This is because UHC has already attempted to compel arbitration based on these very agreements and lost each time. It has done so because each of the relevant agreements contain the following clause at § D:

---

[1] Flemma v. Halliburton Energy Services, Inc., 303 P.3d 814 (N.M.2013).
[2] Zamprelli v. Am. Golf Corp., No. CIV 00-181 BB/RLP, 2001 WL 37119362, at *3 (D.N.M. Apr. 13, 2001)

**D. AMENDMENT OR TERMINATION OF ARBITRATION POLICY**

[UHC] reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice of its intent and the substance of any amendment, modification or termination of the Policy. Notice may be effected by the posting of the notice on the UnitedHealth Group intranet website. The Policy may only be amended, modified or terminated in writing, effective on January 1 of any year, by the authority of the Senior Executive for Human Capital.

Indeed, each and every one of the agreements signed by Plaintiffs contains this unilateral in the same section. In fact, Named Plaintiff and five of the Opt-In Plaintiffs signed the 2006 version of the agreement. Exhibit B, D, F, N, P, R. This is significant because at least three courts—including this one—have determined the same 2006 agreement to be unenforceable for lack of consideration as a matter of law. Clark v. UnitedHealth Grp., Inc., No. CV 13-0372, 2018 WL 2932735, at *1 (D.N.M. June 12, 2018) (rejecting UHC's contention that obligation to arbitrate and offer of at-will employment sufficed as consideration for **2006 agreement** attached as Ex. A); Reyes v. United Healthcare Servs., Inc., No. 14-1741, 2014 WL 3926813, at *2 (C.D. Cal. Aug. 11, 2014) (finding **2006 version**'s "modification provision render[ed] [it] illusory.") (citing Ex. C); Moua v. Optum Servs., Inc., No. 1701717, 2018 WL 3770029, at *3 (C.D. Cal. Feb. 1, 2018) (finding **2006 version**, Ex. D, "illusory because Section D gives UHG the unilateral right to 'amend, modify or revoke,' agreement.").[3]

This is all important because UHC now cites an arbitration agreement—dated 10 years after the 2006 agreement signed by the majority of the Plaintiffs—to support its Motion. ECF 16-2, Ex. S. UHC, however, fails to provide a shred of evidence that any of the Plaintiffs ever signed, electronically acknowledged, read, or even glanced at the 2016 Agreement. This is evident after reading the declaration of UHC's HR Operations Manager that fails to provide any pertinent details about the 2016 version of the agreement other than to say:

---

[3] Plaintiff Whitesell signed a **2012** version (ECF 16-2, Exhibit H) of the agreement that the District of Hawaii determined was illusory after analyzing the agreement under New Mexico law. See also Keanini v. United Healthcare Servs., Inc., 33 F. Supp. 3d 1191, 1198 (D. Haw. 2014) (**2012 agreement**, attached as Ex. B, illusory due to above clause) (citing Flemma v. Halliburton Energy Services, Inc., 303 P.3d 814 (N.M.2013).

2016 Arbitration Policy

UHS and its affiliates periodically revise their Arbitration Policy, and on January 1, 2016, they issued the current Arbitration Policy, which is substantially similar to the previous arbitration policies. A true and correct copy of the 2016 Arbitration Policy is attached as Exhibit S.

## I. RELEVANT FACTS

### A. Plaintiffs Only Signed the 2006, 2012, and 2015 Versions of the So-Called Agreement

Defendants attached a total of 193 pages of arbitration polices, including versions of the arbitration policies from 2006, 2011, 2012, 2015, and 2016. Of these five versions of the agreement, only three versions have been signed by a Plaintiff that UHC now seeks to compel to arbitration. The following chart provides the relevant information pertaining to the nine Plaintiffs:

| Plaintiff | Off. Ltr. | Off. Arb.[4] | Start Date | Sign Date | Start-Arb[5] | Version Signed |
|---|---|---|---|---|---|---|
| Fedor | 9/12/13 | 2012 (Ex. A) | 11/11/13 | 11/11/13 | 0 Days | 2006 (Ex. B) |
| Davis | 4/1/09 | 2006 (Ex. C) | 4/13/09 | 4/15/09 | 2 Days | 2006 (Ex. D) |
| Davidson | 8/30/13 | 2012 (Ex. E) | 11/30/13 | 11/11/13 | -19 Days | 2006 (Ex. F) |
| Whitesell | 10/16/14 | 2012 (Ex. G) | 11/3/14 | 11/3/14 | 0 Days | 2012 (Ex. H) |
| Hays | 1/2/15 | 2015 (Ex. I) | 1/2/15 | 1/12/15 | 10 Days | 2015 (Ex. J) |
| Rice | 6/10/15 | 2015 (Ex. K) | 6/29/15 | 7/6/15 | 7 Days | 2015 (Ex. L) |
| Bchamp | 8/23/11 | 2011 (Ex. M) | 8/15/11 | 9/1/11 | 17 Days | 2006 (Ex. N) |
| Snyder | 10/3/12 | 2012 (Ex. O) | 11/5/12 | 11/5/12 | 0 Days | 2006 (Ex. P) |
| Salopek | 9/10/13 | 2006 (Ex. Q) | 10/8/13 | 10/28/13 | 20 Days | 2006 (Ex. R) |

A few observations can be made based on the above data. First, the above chart shows that the Plaintiffs only signed three versions of the arbitration agreement at issue: (1) six Plaintiffs signed the

---

[4] This refers to the version of the offer letter sent to Plaintiffs along with their offer letter. For example, Exhibit A for Fedor consists of both an offer letter with a 2012 version of the arbitration agreement attached.
[5] This notes how many days between start date and the date Plaintiffs signed the signed the arbitration agreement at issue.

2006 version; (2) one Plaintiff signed the 2012 version; and (3) two Plaintiffs signed the 2015 version. Second, the chart shows that UHC has failed to provide any proof that any of the Plaintiffs have ever seen—nonetheless agreed to—the 2016 version of the agreement that it refers to as the "governing arbitration agreement" in its brief.

**B. FEATURES OF THE 2006 & 2012 AGREEMENTS SIGNED BY PLAINTIFFS FEDOR, DAVIS, DAVIDSON, WHITESELL, BEAUCHAMP, SNYDER, & SALOPEK**

The 2006 and 2012 agreements are the same for all relevant purposes because they both contain the following clauses pertinent to the analysis here:

- **A. STATEMENT OF INTENT:** This Policy is a binding contract between UnitedHealth Group and its employees. Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy. **However, this Policy is not a promise that employment will continue for any specified period of time or end only under certain conditions**.[6] Employment at UnitedHealth Group is a voluntary (at will) relationship existing for no definite period of time and this Policy does not change that relationship.

- **B. SCOPE OF POLICY:** "The disputes covered under the Policy also include any dispute UnitedHealth Group might have with a current or former employee which arises or relates to employment…. **This Policy covers any dispute subject to arbitration which is brought on or after the applicable effective date, as set forth in Section E of this Policy, even if the alleged act or omission occurred prior to the applicable effective date.**[7]

- **D. AMENDMENT OR TERMINATION OF ARBITRATION POLICY:** UnitedHealth Group reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice of its intent and the substance of any amendment, modification or termination of the Policy. Notice may be effected by the posting of the notice on the UnitedHealth Group intranet website. The Policy may only be amended, modified or terminated in writing, effective on January 1 of any year, by the authority of the Senior Executive for Human Capital.[8]

- **E. EFFECTIVE DATE:** This Policy became effective on October 2, 1995, for all persons employed by UnitedHealth Group Corporation or its subsidiaries who were assigned to The MetraHealth Companies, Inc., or any of its subsidiaries. This Policy became effective on

---

[6] This is the agreement to provide at-will employment that UHC contends is consideration for Plaitniffs' agreement to arbitrate. See Ex. A (2012 agreement); Ex. B (2006 agreement).

[7] See Ex. A, B (emphasis added). This is one of the reasons the arbitration agreements are all invalid: UHC has a unilateral modification clause that would allow it to change the rules of arbitration after an employees claim has accrued.

[8] This is the clause that has directly led this Court and the other Courts provided above to determine that arbitration agreements fail for lack of consideration because UHC can always renege on its agreement to arbitrate through this agreement in regards to accrued claims.

> January 1, 1996, for all other employees of UnitedHealth Group or its subsidiaries employed on or after that date.… All arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration. This Policy supersedes any and all prior versions and has been revised effective January 1, 2006.… 1 The term "employee(s)" includes both current and former employees of UnitedHealth Group.[9]

### C. THE 2012 ARBITRATION AGREEMENT SIGNED BY HAYES & RICE IS ONLY SLIGHTLY MODIFIED FROM THE 2012 VERSION AND CAUSES THERE TO BE AN AMBIGUITY REGARDING WHETHER IT APPLIES TO ACCRUED CLAIMS DUE TO CONFLICTING TERMS.

The only material change made to the agreement between 2012 and 2015 was to add the following agreement made in the 2015 agreement was to add language into Section E, which is highlighted below:

> All arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Legal Department receives the Demand for Arbitration, **except that any amendments to the Policy made after a claim arises will not be applied to proceedings related to that claim.**[10]

However, this only caused ambiguity because elsewhere in the document it still provides that both prospective claims and accrued claims are covered by the agreement:

- The disputes covered under the Policy also include any dispute UnitedHealth Group might have with a current or <u>former employee</u> which arises or relates to employment.[11]

- This Policy covers any dispute subject to arbitration which is brought on or after the applicable effective date, as set forth in Section E of this Policy, even if the alleged act or omission occurred prior to the applicable effective date.[12]

Accordingly, while the 2015 version of the agreement seemed to attempt to try to provide consideration for the arbitration agreement by binding UHC to arbitration, it failed to do so because it still unclear whether UHC still has the ability to amend the agreement to change the rules of arbitration for claims that UHC may have knowledge of that an employee has yet to file.

---

[9] This is yet another example of how UHC attempts to manipulate the arbitration process to its own advantage.
[10] See Exhibits I-L.
[11] ECF 16-2, p. 98.
[12] Id.

**II. ARGUMENT**

As with a summary judgment motion, a motion to compel arbitration may only be granted as a matter of law when there is no genuine issue of material fact as to the existence of an agreement. Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir.1997). Only when there is no genuine issue of fact concerning the formation of an arbitration agreement should the court decide the existence of the agreement as a matter of law. Par-Knit Mills, Inc., 636 F.2d at 54. "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." Id.

Although UHC characterizes this briefing as involving two issues, the sole issue before this Court is whether there is a valid and enforceable arbitration agreement that governs the parties in this case. As pointed out by the Dumais court, and quoted by the court in Heye, the "strong policy favoring arbitration,." on which UHC relies in its brief, "disappears when the parties dispute the existence of a valid arbitration agreement," as is the case here. Dumais, 299 F.3d at 1220; Heye, 2003-NMCA-138 ¶8, 80 P.3d at 498. Thus, the sole issue before this Court is whether there is a legally enforceable contract to arbitrate.

Under either the Federal Arbitration Act or the New Mexico Uniform Arbitration Act, both of which were cited in plaintiff's motion to stay action and compel arbitration (RP 105), "a legally enforceable contract is a prerequisite to arbitration; without such a contract, parties will not be forced to arbitrate." Heye, 2003-NMCA 138 ¶8, 80 P.3d at 498. In determining whether there is a legally enforceable arbitration contract this Court looks to state contract law. Heye, 2003-NMCA 138 ¶9, 80 P.3d at 498; In order for there to be an enforceable arbitration contract in New Mexico, "it must be factually supported by an offer, an acceptance, consideration, and mutual assent." Heye, 2003-NMCA 138 ¶9,80 P.3d at 498. The burden of proof is on the party seeking to prove the existence of the

contract, here UHC, to establish that each of these elements have been met. DeArmond, 2003-NMCA-148 ¶ 9, Because UHC failed to do so below, the trial court correctly ruled that the agreement to arbitrate was invalid and unenforceable, and the motion was properly denied. Both the New Mexico Court of Appeals and the Tenth Circuit have joined numerous other courts "in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." Heye, 2003-NMCA-138 ¶11, 80 P.3d at 499; Dumais, 299 F.3d at 1219, citing Floss v. Ryan's Family Steak Houses, 211 F.3d 306,315-16 (6th Cir. 2000); Hooters of Am. Inc. v. Phillips, 173 F.3d 933, 939 (4th Cir. 1999); *5 Gibson v. Neighborhood Health Clinics Inc., 121 F.3d 1126, 133 (7th Cir. 1997). See also, Cheek v. United Healthcare of the Mid-Atlantic, Inc., 835 A.2d 656, 662 (Md. 2003); Pérez v. Hospitality Ventures-Denver LLC, 245 F.Supp.2d 1172, 1174 (D. Colo. 2003); Phox v. Atriums Management Co., 230 F.Supp.2d 1279,1282-83 (D. Kan. 2002); Gourley v. Yellow Transportation, LLC, 178 F.Supp.2d 1196, 1202 (D. Colo. 2001); Tenet Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 399 (Tex. 1998); Trumbull v. Century Marketing Corp., 12 F.Supp.2d 683, 686 (N.D. Ohio 1998).

Here, as in both Heye and Dumais, UHC reserved the "option of changing the arbitration provision at will" and thus it is illusory and unenforceable. Heye, 2003-NMCA-138 ¶11, 80 P.3d at 499, citing Dumais, 299 F.3d at 1218-19. The Heye court explained:

> A valid contract must possess mutuality of obligation. Mutuality means both sides must provide consideration." *Bd. of Educ. v. James Hamilton Constr. Co.,* 119 N.M. 415, 420, 891 P.2d 556, 561 (Ct.App.1994). Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do. Restatement (Second) of Contracts §§ 73, 74, at 179, 185 (1981). Furthermore, a promise must be binding. When a promise puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration. *Lukoski v. Sandia Indian Mgmt. Co.,* 106 N.M. 664, 666–67, 748 P.2d 507, 509–10 (1988) (confirming that if an employer issues a policy statement in a manual, encourages reliance on the policy, and then only selectively abides by it, the employer is making an illusory promise); *James Hamilton Constr. Co.,* 119 N.M. at 420, 891 P.2d at 561 ("A purported promise that actually promises nothing because it leaves the choice of performance entirely to the offeror is illusory, and an illusory promise is not sufficient consideration

to support a contract."); Restatement § 77 cmt. a, at 195; 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, *Corbin on Contracts* § 5.28, at 142 (rev. ed.1995).[13]

Reading the parties' contract as a whole and construing any ambiguities against the drafter, as is required by Heye, 2003-NMCA-138 ¶14, 80 P.3d at 499, it is clear that UHC reserved to itself alone the right to change or terminate its obligation to arbitrate claims. This is why no less than four courts have determined that the agreements at issue are void for lack of consideration.

Moreover, while the 2015 version of the agreement signed by two of the plaintiffs here states that it cannot be applied to previous claims, this has only creating an ambiguity regarding the scope of the policy. In such situations, the ambiguity is construed against the drafter, UHC, and the contract would still be read to allow UHC to unilaterally modify the agreement rendering it illusory and unenforceable. Heye, 2003-NMCA-138 ¶14, 80 P.3d at 499-500

UHC also asserts that its agreement to provide continued at-will employment to Salazar establishes the required consideration. Courts that have considered the issue presented here have held that continuation of at-will employment is not sufficient consideration for an employee's promise to arbitrate. See, Cheek, 835 A.2d at 664-666 (noting that the court could not consider the consideration given for the underlying contract when deciding whether adequate consideration for the agreement to arbitrate existed and holding that continued employment did not act as consideration in return for the employee's promise to arbitrate); Phox, 230 F.Supp.2d at 1283 (promise of at-will employment itself was illusory because employer could have fired the employee as soon as she signed the arbitration agreement); Tenet v. Cooper, 960 S.W.2d at 388-89 ("consideration for a promise, by either the employee or the employer in an at-will employment cannot be dependent on a period of continued employment" and therefore there *13 was no consideration for arbitration agreement). See also, Heye, 2003-NMCA-138 ¶16, 80 P.3d at 500 (rejecting argument that the plaintiffs employment and

---

[13] Heye v. Am. Golf Corp., 2003-NMCA-138, ¶ 12, 134 N.M. 558, 562, 80 P.3d 495, 499

continued employment provided the necessary consideration to make the arbitration agreement enforceable).

Respectfully submitted,

*/s/ Jack Siegel*
**J. DEREK BRAZIEL**
*Co-Attorney in Charge*
Texas Bar No. 00793380
jdbraziel@l-b-law.com
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelawyer.com

**JACK SIEGEL**
*Co-Attorney in Charge*
Texas Bar No. 24070621
jack@siegellawgroup.biz
Siegel Law Group, PLLC
2820 McKinnon, Suite 5009
Dallas, Texas 75201
P: (214) 749-1400
www.siegellawgroup.biz

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This brief was served on all counsel of record on the date of this filing through the Court's ECF System.

*/s/ Jack Siegel*
**JACK SIEGEL**