# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DANA FEDOR, AND ALL OTHERS SIMILARLY SITUATED,<br><br>    *Plaintiff*,<br><br>v.<br><br>UNITEDHEALTHCARE, INC., and UNITED HEALTHCARE SERVICES, INC.,<br><br>    *Defendants*. | **Civil Action No.** 1:17-cv-00013-MV-KBM<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S AMENDED SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS

Respectfully submitted,

*/s/ Jack Siegel*

**J. Derek Braziel**
Texas Bar No. 00793380
jdbraziel@l-b-law.com
**Travis Gasper**
Texas Bar No. 26096881
gasper@l-b-law.com
**Lee & Braziel, L.L.P.**
1801 N. Lamar St. Suite 325
Dallas, Texas 75202
(214) 749-1400 phone
(214) 749-1010 fax

**Jack Siegel**
*Co-Attorney in Charge*
Texas Bar No. 24070621
**Siegel Law Group PLLC**
2820 McKinnon, Suite 5009
Dallas, Texas 75201
(214) 790-4454
www.4overtimelawyer.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the date of this filing that the foregoing document was sent to opposing counsel via the District's ECF system.

/s/ Jack Siegel
Jack Siegel

**I.    INTRODUCTION**

The versions of the Arbitration Agreement actually signed by the Named Plaintiff and Opt-In Plaintiffs ("Signed Agreements") lack consideration and are illusory under New Mexico law. This is because the Arbitration Agreements signed by the Plaintiffs have the same defect—a "Unilateral Modification Clause" that allows Defendant the unilateral right to "amend, modify or terminate" the Arbitration Agreement:

> UnitedHealth Group reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice of its intent and the substance of any amendment, modification or termination of the Policy…. All arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration.[1]

This Court should join the (1) four courts that have already determined that the above Unilateral Modification Clause makes the agreement illusory for lack of bilateral consideration; and (2) including the two Courts that have concluded the Agreement is unenforceable under the New Mexico Supreme Court's precedent in Flemma v. Halliburton Energy Services, Inc., 303 P.3d 814 (N.M.2013).

Defendant attempts to avoid this inevitable holding by sticking in a version of the Arbitration Agreement at issue has no relevance to the Court's determination of whether the Agreements actually signed by Plaintiffs were supported by consideration. Defendant provides the irrelevant 2016 version of the Arbitration Agreement because this new version of the Arbitration Agreement—unlike the 2006, 2012, and 2015 versions signed by the Plaintiffs—amended the Arbitration Agreement by taking out the unilateral modification provision that caused all prior versions to lack a mutual agreement to arbitrate. Defendant, however, fails to show how or why this agreement would apply to the Plaintiffs who signed prior versions of the Arbitration Agreement that are void for lack of consideration.

---

[1] See Exhibit A, §§ D-E (containing excerpts of Arbitration Agreements signed by Plaintiffs Fedor, Davis, Davidson, Whitesell, Beauchamp, Snyder, and Salopek).

Because the Arbitration Agreements <u>actually</u> signed by Plaintiffs are illusory for lack of consideration, no valid Arbitration Agreement exists between the parties. Accordingly, the Court should follow the guidance of the four Courts that have already weighed in on the Arbitration Agreements at issue and deny Defendant's attempt to cite to an irrelevant agreement never signed by any of the Plaintiffs to support compelling arbitration.

## II. BACKGROUND
### A. Plaintiffs Only Signed 2006, 2012, & 2015 Versions of the Agreement

Because Defendant included 19 different arbitration agreements in a single exhibit (ECF 16-2) that spans 193 pages, Plaintiff felt compelled to summarize the arbitration agreements provided to the Plaintiffs. The following chart specifically summarizes the arbitration agreements that (1) were included with Plaintiffs' offer letters that Plaintiffs never signed; and (2) the arbitration agreements that the Plaintiffs ended up signing after beginning their employment with Defendant:

| Plaintiff | Off. Ltr. Date[2] | Arb. Not Signed[3] | Version Signed[4] | Signed Date[5] | Start Date[6] | Start-Arb[7] |
|---|---|---|---|---|---|---|
| Fedor | 9/12/13 | 2012 (Ex. A) | 2006 (Ex. B) | 11/11/13 | 11/11/13 | 0 Days |
| Davis | 4/1/09 | 2006 (Ex. C) | 2006 (Ex. D) | 4/15/09 | 4/15/09 | 2 Days |
| Davidson | 8/30/13 | 2012 (Ex. E) | 2006 (Ex. F) | 11/11/13 | 11/11/13 | -19 Days |
| Whitesell | 10/16/14 | 2012 (Ex. G) | 2012 (Ex. H) | 11/3/14 | 11/3/14 | 0 Days |

---

[2] This refers to the start date for Plaintiffs that was provided on the face of the offer letter sent to Plaintiffs. Motion, <u>Exhibits</u> A, C, E, G, I, K, M, O, Q.

[3] This refers to the version of the arbitration agreement that plaintiffs were provided along with the offer letter, which were never signed by Plaintiffs. <u>Id.</u>

[4] This refers to the versions of the agreement actually executed by the Plaintiffs after they began their employment. Exhibits B, D, F, H, J, L, N.

[5] This refers to the date the Plaintiffs actually signed the Arbitration Agreements. <u>Id.</u>

[6] Start date for Plaintiffs provided by Offer Letter. <u>Exhibits</u> A, C, E, G, I, K, M, O, Q.

[7] Days between the Plaintiffs' start date and the date they executed the Arbitration Agreements.

| Hays | 1/2/15 | 2015 (Ex. I) | 2015 (Ex. J) | 1/12/15 | 1/12/15 | 10 Days |
|---|---|---|---|---|---|---|
| Rice | 6/10/15 | 2015 (Ex. K) | 2015 (Ex. L) | 7/6/15 | 7/6/15 | 7 Days |
| Beauchamp | 8/23/11 | 2011 (Ex. M) | 2006 (Ex. N) | 9/1/11 | 9/1/11 | 17 Days |
| Snyder | 10/3/12 | 2012 (Ex. O) | 2006 (Ex. P) | 11/5/12 | 11/5/12 | 0 Days |
| Salopek | 9/10/13 | 2006 (Ex. Q) | 2006 (Ex. R) | 10/28/13 | 10/28/13 | 20 Days |

The above table exhibits that Plaintiffs only signed three versions of the Arbitration Agreement at issue: The 2006, 2012, and 2015 versions of the Arbitration Agreement ("Signed Agreements"). In contrast, the table exposes that no Plaintiff ever signed a 2011 version of the agreement. Motion, Exhibit M. More importantly, the table exposes that Defendant has no evidence that Plaintiffs ever signed, acknowledged, glanced, or even knew about the 2016 version of the agreement. Id., Exhibit S.

In order to make the Court's review easier, Plaintiffs have extracted the material pages from each Signed Agreements and grouped them by version of agreement. The material portions of the (1) 2006 versions of the Agreement signed by Plaintiffs Fedor, Davis, Davidson, Davidson, Beauchamp, Snyder and Salopek are included together in Exhibit A; (2) 2012 versions signed by Plaintiff Whitesell is included in Exhibit B; and (3) the 2015 version signed by Plaintiffs Hays and Rice are included as Exhibit C. Plaintiff also included the very 2016 Arbitration Agreement that none of the Plaintiffs signed as Exhibit D.

**B. The 2006, 2012, and 2015 Arbitration Agreements Signed by the Plaintiffs**

The 2006 and 2012 Agreements (Exhibits A & B) are the same for all relevant purposes because they both contain the following clauses pertinent to the analysis here:

**A. STATEMENT OF INTENT:** This Policy is a binding contract between UnitedHealth Group and its employees. Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy. However, this Policy is not a promise that employment will continue for any specified period of time or end only under certain conditions. Employment at UnitedHealth Group is a voluntary (at will) relationship existing for

no definite period of time and this Policy does not change that relationship.[8]

**B. SCOPE OF POLICY:** "The disputes covered under the Policy also include any dispute UnitedHealth Group might have with a current or former employee which arises or relates to employment…. **This Policy covers any dispute subject to arbitration which is brought on or after the applicable effective date, as set forth in Section E of this Policy, even if the alleged act or omission occurred prior to the applicable effective date.**[9]

**D. AMENDMENT OR TERMINATION OF ARBITRATION POLICY:** UnitedHealth Group reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice of its intent and the substance of any amendment, modification or termination of the Policy. Notice may be effected by the posting of the notice on the UnitedHealth Group intranet website. The Policy may only be amended, modified or terminated in writing, effective on January 1 of any year, by the authority of the Senior Executive for Human Capital.[10]

**E. EFFECTIVE DATE:** …. All arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration. This Policy supersedes any and all prior versions and has been revised effective January 1, 2006[11]…. 1 The term "employee(s)" includes both current and former employees of UnitedHealth Group.

Importantly, the 2006 and 2012 versions of the Arbitration Agreement are identical in all material respects to the 2006 and 2012 versions of the agreement that four courts have already found to be illusory due to the provisions that allow Defendant to unilaterally terminate or modify the policy after a claim has accrued.[12]

---

[8] This is the agreement to provide at-will employment that UHC contends is consideration for Plaintiffs' agreement to arbitrate. See Ex. A (2012 Agreement); Ex. B (2006 Agreement); Ex. C (2015 Agreement).

[9] See Exhibits A-C (emphasis added). This is one of the reasons the arbitration agreements are all invalid: UHC has a unilateral modification clause that would allow it to change the rules of arbitration or eliminate the agreement to arbitrate after an employee's claim has accrued.

[10] This is the clause that has directly led this Court and the other Courts provided above to determine that arbitration agreements fail for lack of consideration because UHC can always renege on its agreement to arbitrate through this agreement in regards to accrued claims.

[11] The only distinction between the material portions of the 2006 and 2012 policies is the revision date. See Exhibit B § E (2012 version providing that This Policy supersedes any and all prior versions and has been revised effective January 1, **2012**.") (emphasis added).

[12] Clark v. UnitedHealth Grp., Inc., No. CV 13-0372, 2018 WL 2932735, at *1 (D.N.M. June 12, 2018) (rejecting contention that obligation to arbitrate and offer of at-will employment sufficed as consideration) (construing 2006 Agreement attached as Exhibit E); Reyes v. United Healthcare Servs.,Inc., No. 14-1741,

The 2015 Arbitration Agreement signed by Plaintiffs Hays and Rice also contains the same §D, entitled "Amendment or Termination of Arbitration Policy" that rendered the agreements in the above cases unenforceable for lack of consideration. Exhibit C, p. 8, 16. The agreement, however, modified §E, entitled "Effective Date", to reflect the following:

> All arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Legal Department receives the Demand for Arbitration, **except that any amendments to the Policy made after a claim arises will not be applied to proceedings related to that claim.**
>
> This Policy supersedes any and all prior versions and has been revised effective January 1, 2015.

This language is contradicted in Section B of the Agreement, which provides that the "Policy covers any dispute subject to arbitration which is brought on or after the effective date, as set forth in Section E of this Policy, <u>even if the alleged act or omission occurred prior to the applicable effective date</u>." Id., p. 4, 12 (emphasis added). While the Agreement arguably limits Defendant from <u>modifying</u> the policy to an already accrued claim, it does not contain a provision that disallows Defendant from terminating the policy in regards to an already accrued claim.

### C. The 2016 Arbitration Agreement Has No Relevance Here

Defendant attempts to trick the Court into believing that the Plaintiffs in this case executed the 2016 Arbitration Agreement ("Irrelevant Agreement"). The only link between the Plaintiffs and the 2016 Arbitration Agreement comes from Defendant's HR Operations Manager who provides that:

> UHS and its affiliates periodically revise their Arbitration Policy, and on January 1, 2016, they issued the current Arbitration Policy, which is substantially similar to the

---

2014 WL 3926813, at *2 (C.D. Cal. Aug. 11, 2014) ("modification provision render[ed] [agreement] illusory.") (construing 2006 version attached as Exhibit F); Moua v. Optum Servs., Inc., No. 1701717, 2018 WL 3770029, at *3 (C.D. Cal. Feb. 1, 2018) (finding **2006 version** "illusory because Section D gives UHG the unilateral right to 'amend, modify or revoke,' agreement.") (construing 2006 Agreement attached as Exhibit G); Keanini v. United Healthcare Servs., Inc., 33 F. Supp. 3d 1191, 1198 (D. Haw. 2014) (finding **2012 agreement** illusory due to above clause) (citing Flemma v. Halliburton Energy Services, Inc., 303 P.3d 814 (N.M. 2013).

previous arbitration policies. A true and correct copy of the 2016 Arbitration Policy is attached as Exhibit S.[13]

Suspiciously, Christopher Sprau did <u>not</u> bring up the Irrelevant Agreement in his declaration in support of compelling arbitration in Clark v. UnitedHealth Grp., Inc. Exhibit E, pp. 1-2. Mr. Sprau had no reason to mention the 2016 Arbitration Agreement here either because Defendant presents no evidence supporting that any of Plaintiffs signed, read or even knew about this Policy.

Defendant attempts to sneak the Irrelevant Agreement into the Court's analysis because it does not have the same features as the prior agreements that Courts, including Magistrate Molzen, have found render it unenforceable. A comparison of the Signed Agreements to the Irrelevant Agreements shows that the Irrelevant Agreement removed the elements of the Signed Agreements that render them unenforceable:

| § | Signed Agreements<br>Exhibits A-C | Irrelevant Agreement<br>Exhibit D |
|---|---|---|
| B | "This Policy covers any dispute subject to arbitration which is brought on or after the applicable effective date, as set forth in Section E of this Policy, even if the alleged act or omission occurred prior to the applicable effective date."[14] | The Irrelevant Agreement does not contain a similar provision allowing for retroactive application. |
| D | Title: "**AMENDMENT OR TERMINATION OF ARBITRATION POLICY**" | Title: "**ARBITRATION RULES AND PROCEDURES**" |
| D | "UnitedHealth Group reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice of its intent and the substance of any amendment, modification or termination of the Policy." | No similar provision allowing for amendment, modification or termination of policy. |
| E | Title: "**EFFECTIVE DATE**" | Title: "**CONSIDERATION**" |

---

[13] ECF 16-1, ¶ 33.

[14] See Exhibits A-C (emphasis added). This is one of the reasons the arbitration agreements are all invalid: UHC has a unilateral modification clause that would allow it to change the rules of arbitration or eliminate the agreement to arbitrate after an employee's claim has accrued.

| | | |
|---|---|---|
| E | "All arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration." | No similar language allowing for retroactive application of amendment or termination. |

Despite these fundamental differences between the agreements and having no evidence that any Plaintiff ever even knew about the Irrelevant Agreement, Defendant pushes it as the governing agreement throughout its Brief. The only reason it pushes for this false reality is that the Irrelevant Agreement does not have the Unilateral Modification Provisions included in the 2006, 2012 and 2015 versions actually seen and electronically signed by the Plaintiffs. See ECF 16-1 (Defendant's HR Operations HR Manager testifying that Plaintiffs only executed Signed Agreements and had seen all of the Arbitration Agreements included as Exhibits to the Motion other than the 2016 Agreement).

While Defendant seeks to trick the Court into believing that Section D of the Irrelevant Agreement controls its analysis, it is Section D included in all of the prior Agreements that controls the Court's analysis. If the Court interprets the Signed Agreements—rather than the Irrelevant Agreement pushes[15]—it will reach the same conclusion as the other Courts that have determined that section D of the signed agreements render the Arbitration Agreement illusory and unenforceable.

### III. ARGUMENTS & AUTHORITY
#### A. THE PARTIES AGREE: NEW MEXICO STATE LAW DETERMINES WHETHER A VALID ARBITRATION AGREEMENT EXISTS BETWEEN THE PARTIES

The parties agree that the Federal Arbitration Act ("FAA") provides that a valid written agreement to arbitrate is enforceable. However, this District has explained that the FAA "was not enacted to force parties to arbitrate in the absence of an agreement. Congress' concern, rather, was to enforce private agreements into which parties had entered. Accordingly, the existence of an agreement

---

[15] Defendant totally ignores that prior version of Section D in its Brief: "Finally, Paragraph D of the governing Arbitration Policy makes clear that the agreement is governed by the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA Rules")." ECF 16, p. 16 (citing Sprau Decl., Ex. S at § D).

is a threshold matter which must be established before the FAA can be invoked."[16] As recently explained by Judge Browning, the presumption in favor of arbitration does not apply until **after** the Court determines the parties entered into a valid arbitration agreement:

> While "the presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement, ... this presumption disappears when the parties dispute the existence of a valid arbitration agreement." Dumais v. Am. Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002). See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998)("When the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away."). In the Tenth Circuit, and in New Mexico courts, the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." Avedon Eng'g Inc. v. Seatex, 126 F.3d 1279, 1287 (10th Cir. 1997). See K.L. House Constr. Co. v. City of Albuquerque, 1978-NMSC-025, ¶ 8, 91 N.M. 492, 576 P.2d 752, 754 ("[T]he courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration.").[17]

Rather than invoking the FAA, Courts generally look to state contract law to determine the validity of arbitration agreements.[18] The parties here agree that "New Mexico state law governing contract formation applies in determining whether Plaintiffs and [Defendant] entered into a valid and enforceable agreement to arbitrate…."[19]

B. **THE SIGNED AGREEMENTS ARE ILLUSORY FOR LACK OF CONSIDERATION**

---

[16] THI of New Mexico at Vida Encantada, LLC v. Lovato, 848 F. Supp. 2d 1309, 1322 (D.N.M. 2012) (quoting *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir.1997) (internal quotations omitted).

[17] Jerry Erwin Assocs., Inc. v. Estate of Asher by & through Zangara, 290 F. Supp. 3d 1213, 1234 (D.N.M. 2017).

[18] First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)

[19] ECF 16, p. 13.

In determining whether an agreement to arbitrate is illusory, a court applies the state law of contracts.[20] The presumption in favor of arbitration is inapplicable to this determination.[21] As explained by the Tenth Circuit in rejecting a defendant's argument that the strong presumption in favor of arbitration required the Court to ignore a contract's illusory nature:

> American Golf's position improperly conflates two separate inquiries-the existence of a valid arbitration agreement and the interpretation of a valid arbitration agreement's scope. The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement.[22]

Plaintiff contends that under New Mexico Law no valid arbitration contract exists in the first place. The FAA's presumption does not apply to this inquiry.[23] The Courts of Appeal have "made clear that in their view the presumption in favor of arbitration applies to the question whether a particular dispute falls within an existing agreement's scope, but not to the threshold question as to the existence

---

[20] *See Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ("[S]tate law … is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.").

[21] *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219–20 (10th Cir. 2002) ("Because we hold that the agreement between American Golf and Appellee to arbitrate is illusory, the presumption in favor of arbitration is inapplicable.").

[22] *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219–20 (10th Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)) (other citations omitted).

[23] *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 758-59 (7th Cir. 2001) ("While the Supreme Court has stressed… that federal policy under the FAA favors the enforcement of valid arbitration agreements…the Court has been equally adamant that a party can be forced into arbitration only if she has in fact entered into a valid, enforceable contract waiving her right to a judicial forum.") (citing to *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

of an agreement between the parties to arbitrate."[24] To determine whether the parties agreed to arbitrate, "courts should apply ordinary state-law principles that govern the formation of contracts."[25]

Under New Mexico law, a "valid contract must possess mutuality of obligation. Mutuality means both sides must provide consideration."[26] Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do.[27] The burden of proof is on the party asserting that a valid contract exists.[28] As explained by the New Mexico Supreme Court in a decision where it found a defendant's arbitration agreement illusory because the agreement provided the defendant with authority to unilaterally amend the agreement after a claim accrued:

> The existence of a valid agreement to arbitrate is required to compel arbitration. Whether a valid contract to arbitrate exists is a question of state contract

---

[24] *Century Indem. Co. v. Certain Underwriters at Lloyd's,* 584 F.3d 513, 526–27 (3d Cir. 2009) (collecting cases); *Sherer v. Green Tree Servicing LLC,* 548 F.3d 379, 381 (5th Cir.2008) ("We apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question *527 falls within an arbitration agreement's scope, but we do not apply this policy when determining whether a valid agreement exists."); *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir.2002) ("The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement.") (citing *First Options,* 514 U.S. at 944–45, 115 S.Ct. at 1924); *McCarthy v. Azure,* 22 F.3d 351, 355 (1st Cir.1994) (Once agreement between parties has been proven, "the federal policy favoring arbitration requires that any doubts concerning the scope of an arbitrable issue be resolved in favor of arbitration," but this policy "does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear.") (internal quotation marks omitted) (citing *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941–42, and *PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990)); *Grundstad v. Ritt,* 106 F.3d 201, 205 n. 5 (7th Cir.1997) ("[T]he federal policy favoring arbitration applies to issues concerning the scope of an arbitration agreement entered into consensually by contracting parties; it does not serve to extend the reach of an arbitration provision to parties who never agreed to arbitrate in the first place.").

[25] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995)

[26] *Bd. of Educ. v. James Hamilton Constr. Co.,* 119 N.M. 415, 420, 891 P.2d 556, 561 (Ct.App.1994).

[27] Restatement (Second) of Contracts §§ 73, 74, at 179, 185 (1981).

[28] *Camino Real Mobile Home Park *823 P'ship v. Wolfe,* 119 N.M. 436, 442, 891 P.2d 1190, 1196 (1995) ("The plaintiff's burden of proof in an action for breach of warranty thus is identical to the burden of proof in any action for breach of contract. The party relying on the breach of warranty must prove the existence of a warranty, the breach thereof, causation, and damages").

law. For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent. The burden of proof is on the party asserting that a valid contract exists.

A promise is illusory if it consists of words in promissory form that promise nothing. According to the Restatement (Second) of Contracts § 77 (1981), "A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances...." A party's promise to arbitrate is also illusory where it retains the ability to unilaterally change the arbitration agreement.[29]

The New Mexico Court of Appeals recently explained the concept of an illusory promise in a decision where the court found an arbitration agreement unenforceable for lack of consideration where the only consideration provided by the Defendant was continued at-will employment:

> When a promise puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration." *Lukoski v. Sandia Indian Mgmt. Co.,* 106 N.M. 664, 666–67, 748 P.2d 507, 509–10 (1988) (confirming that if an employer issues a policy statement in a manual, encourages reliance on the policy, and then only selectively abides by it, the employer is making an illusory promise); *James Hamilton Constr. Co.,* 119 N.M. at 420, 891 P.2d at 561 ("A purported promise that actually promises nothing because it leaves the choice of performance entirely to the offeror is illusory, and an illusory promise is not sufficient consideration to support a contract."); Restatement § 77 cmt. a, at 195; 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, *Corbin on Contracts* § 5.28, at 142 (rev. ed. 1995).[30]

As Judge Vasquez explained in invalidating an arbitration agreement on grounds that at will-employment following an employee's hiring could not serve as consideration for an agreement to arbitrate:

> An arbitration agreement is unenforceable if it is unsupported by consideration. *Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126 (7th Cir.1997). If the employee signed an arbitration agreement **after she was hired,** and was not given anything in return

---

[29] *Flemma v. Halliburton Energy Servs., Inc.,* 2013-NMSC-022, ¶ 29, 303 P.3d 814, 823 (internal citations and quotations omitted); *see also Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir.2002) ("[A]n arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."); *Salazar v. Citadel Commc'ns Corp.,* 2004–NMSC–013, ¶ 9, 135 N.M. 447, 90 P.3d 466 ("Under general New Mexico contract law, an agreement that is subject to unilateral modification or revocation is illusory and unenforceable."); *Heye v. Am. Golf Corp.,* 2003–NMCA–138, ¶¶ 11–12, 134 N.M. 558, 80 P.3d 495 (same).

[30] *Heye v. Am. Golf Corp.,* 2003-NMCA-138, ¶ 12, 134 N.M. 558, 562, 80 P.3d 495, 499.

for signing away her rights, the agreement is unsupported by consideration. *Zamprelli v. American Golf Corp.,* CIV 00–0181 BB/RLP (Aug. 28, 2000). I recognize that economic considerations may require modification of an at-will employee's working conditions, such as scheduling and compensation. However, the rights that Plaintiff purportedly surrendered were far more important than those associated with mere conditions of employment.[31]

The District of Oklahoma recently agreed with Judge Vasquez and quoted a New Mexico Court of Appeals decision in justifying its decision to find an arbitration agreement illusory for lack of consideration where the only consideration provided by defendant was at-will employment after the plaintiff's hiring:

> In short, the Court declines to enforce the DRA because Ms. Williams-Jackson received nothing in return for her having signed it. "[Ms. Williams-Jackson] was an at-will employee before she signed the Arbitration Agreement and she remained an at-will employee after the signed the Arbitration Agreement. The implied promise of continued at-will employment placed no constraints on [Brookdale's] future conduct; its decision to continue [Ms. Williams-Jackson's] at-will employment was entirely discretionary.[32]

These decisions are not mere anomalies: Courts throughout New Mexico, the Tenth Circuit, and the country have determined that continued at-will employment cannot serve as consideration for an agreement to arbitrate.[33]

---

[31] *Dumais v. Am. Golf Corp.,* 150 F. Supp. 2d 1182, 1193–94 (D.N.M. 2001), aff'd, 299 F.3d 1216 (10th Cir. 2002) (emphasis added).

[32] *Williams-Jackson v. Innovative Senior Care Home Health of Edmond LLC,* No. CIV-17-465-R, 2017 WL 4334232, at *2 (W.D. Okla. June 16, 2017) (quoting *Piano v. Premier Distributing Co.*, 107 P. 3d 11, 14 (N.M. Ct. App. 2004) ((holding that an employer's promise to continue employee's at-will employment was illusory and therefore not valid consideration for Plaintiff's promise to submit her claims to arbitration).

[33] *Salazar v. Citadel Communications Corp.,* 2004–NMSC–013, ¶ 8, 135 N.M. 447, 90 P.3d 466 (finding arbitration agreement made in "consideration of continued employment and the mutual agreement to arbitrate claims" illusory); *Heye v. Am. Golf Corp.,* 2003-NMCA-138, ¶ 15, 134 N.M. 558, 563, 80 P.3d 495, 500 (at-will employment insufficient consideration for arbitration agreement); *Thompson v. Bar-S Foods Co.*, 174 P.3d 567, 577 (Okla. 2007) (refusing to compel arbitration and rejecting employer's contention that an employee's "continued employment manifests assent to the condition [of arbitration] and constitutes consideration").*Baker v. Bristol Care, Inc.*, 450 S.W.3d 770 (Mo. 2014) ("An offer of continued at-will employment is not valid consideration because the employer makes no legally enforceable promise to do or refrain from doing anything it is not already obligated to do."); *Poole v. Incentives Unlimited, Inc.*, 525 S.E.2d 898, 901 (S.C. Ct. App. 1999) (holding that covenant not to compete, signed by at-will employee four years after she was hired, was illusory because "even though [plaintiff] signed the covenant, [the employer] retained the right to discharge her at any

1. **THE SIGNED AGREEMENTS LACK CONSIDERATION: NO MUTUAL AGREEMENT TO ARBITRATE EXISTS BETWEEN THE PARTIES TO PROVIDE CONSIDERATION.**

As explained above, Plaintiffs signed identical agreements to those Courts have found to be illusory for lack of consideration in other cases. For example, this Court has already held that the 2006 version of the Agreement—which is identical to the 2012 Agreement in all material respects—was unenforceable under New Mexico Supreme Court precedent:

> In order to compel arbitration, the parties must have entered into a valid agreement to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The validity of an agreement to arbitrate depends on state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under New Mexico law, a valid agreement to arbitrate must be supported by an offer, an acceptance, consideration, and mutual assent. *Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶ 28, 303 P.3d 814 (internal quotation and citation omitted).
>
> Plaintiff contends that the Agreement was never valid because it was not supported by consideration. In particular, she contends the Agreement's Amendment Clause makes Defendants' promise to arbitrate illusory, as Defendants could unilaterally amend or terminate the Agreement after Plaintiff's termination. *Doc. 100* at 3-8.
>
> A promise or return promise is insufficient consideration if that promise is illusory. Restatement (Second) of Contracts § 77 (1981). An illusory promise is one that "makes performance entirely optional." *Id.* For instance, in *Flemma v. Halliburton Energy Services*, the New Mexico Supreme Court found an employer's promise to arbitrate its own claims against an employee illusory where the employer retained the ability to unilaterally modify or terminate the arbitration agreement after an employee was terminated but before arbitration began. 2013-NMSC-022, ¶¶ 27, 32. Although the employer was required to provide notice before amending the arbitration agreement, the court found the notice requirement immaterial, because "terminated employees ... would not receive advance notice of changes to the agreement." *Id.* ¶ 33.
>
> Here, as in *Flemma*, Defendants reserved the right to unilaterally change the Arbitration Agreement after an employee was terminated but before a claim was filed. *Doc. 97-1* at 11. Because Defendants could so modify that agreement, their promise to arbitrate therefore was illusory and failed to constitute consideration under New Mexico law. *See Flemma*, 2013-NMSC-022, ¶ 32. Defendants' suggestion that the notice

---

time"); *Martin v. Credit Prot. Ass'n*, Inc., 793 S.W.2d 667, 670 (Tex. 1990) (finding that covenant not to compete, signed after the employee's employment began, "was not supported by independent valuable consideration").

provision somehow rescued the Agreement from unenforceability is unavailing given the court's rationale in *Flemma. See* 2013-NMSC-022, ¶ 33.[34]

Moreover, the District of Hawaii has already analyzed the 2012 Agreement (Exhibit H) under the same New Mexico Supreme Court precedent utilized by this Court to conclude that the 2012 version of the Agreement also lacks consideration because its unilateral modification provision renders it unenforceable.[35] The 2006 and 2012 agreement signed by Fedor, Davis, Davidson, Whitesell, Beauchamp, Snyder, and Salopek are thus llusory because they lack a mutual promise to arbitrate.

Moreover, the 2015 Arbitration Agreement signed by Plaintiffs Hays and Rice is also unenforceable because it lacks a mutual agreement to arbitrate because it too contains the Unilateral Modification Provision included in the 2006 and 2012 versions of the Signed Agreements. This result is the same as the prior agreements despite the language in Section E of the Agreement that purportedly limits the application of amendments to the agreement to prospective claims.[36] This is because Defendant would still have the right under the 2016 Agreement to <u>revoke</u> or <u>terminate</u> the agreement in regards to previously accrued claims. Because the 2016 Agreement would allow Defendant to revoke the agreement in regards to previously accrued claims, it is unenforceable as a matter of law. <u>Patterson v. Nine Energy Serv., LLC</u>, No. CIV 17-1116 JB/GBW, 2018 WL 4148454, at *9 (D.N.M. Aug. 30, 2018) (Browning, J.) ("Under general New Mexico contract law, an agreement that is subject to unilateral… revocation is illusory and unenforceable…This principle applies equally

---

[34] <u>Clark v. UnitedHealth Grp., Inc.</u>, No. CV 13-0372 MV/CG, 2018 WL 2932735, at *2–3 (D.N.M. June 12, 2018), <u>report and recommendation adopted,</u> No. CV 13-0372 MV/CG, 2018 WL 3539817 (D.N.M. July 23, 2018); see also

[35] <u>Keanini v. United Healthcare Servs., Inc.</u>, 33 F. Supp. 3d 1191, 1198 (D. Haw. 2014) (finding **2012 agreement** illusory due to above clause).

[36] <u>See</u> <u>Exhibit</u> C, § D ("All arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Legal Department receives the Demand for Arbitration, except that any <u>amendments</u> to the Policy made after a claim arises will not be applied to proceedings related to that claim.").

to agreements to arbitrate.") (quoting <u>Salazar v. Citadel Commc'ns Corp.</u>, 2004-NMSC-013, ¶ 9, 135 N.M. 447, 90 P.3d at 469).

## 2. AT-WILL EMPLOYMENT DOES NOT CONSTITUTE

Moreover, this Court has also already determined that continued at-will employment or even the offer of employment does not provide sufficient consideration to arbitrate and Plaintiff believes the Court's analysis in that opinion controls here under nearly identical circumstances as that case.[37] This is especially true where the Arbitration Agreement states explicitly that:

> [T]his Policy is not a promise that employment will continue for any specified period of time or end only under certain conditions. Employment at UnitedHealth Group is a voluntary (at will) relationship existing for no definite period of time and this Policy does not change that relationship.[38]

This disclaimer shows that Defendant has in fact promised Plaintiff nothing in exchange for the promise to arbitrate. Accordingly, the Signed Agreements actually entered into between the parties are void for lack of consideration. Salazar v. Citadel Communications Corp., 2004–NMSC–013, ¶ 8, 135 N.M. 447, 90 P.3d 466 (finding arbitration agreement made in "consideration of continued employment and the mutual agreement to arbitrate claims" illusory); Heye v. Am. Golf Corp., 2003- NMCA-138, ¶ 15, 134 N.M. 558, 563, 80 P.3d 495, 500 (at-will employment insufficient consideration for arbitration agreement); Thompson v. Bar-S Foods Co., 174 P.3d 567, 577 (Okla. 2007) (refusing to compel

---

[37] <u>Clark v. UnitedHealth Grp., Inc.</u>, No. CV 13-0372 MV/CG, 2018 WL 2932735, at *6 (D.N.M. June 12, 2018) ("This is not to say that an at-will employment contract could never include an enforceable arbitration agreement. Rather, at-will relationships are subject to arbitration agreements whenever another form of consideration supports the employment agreement. Clearly such consideration exists when the parties mutually agree to arbitrate their disputes in valid and enforceable arbitration agreements—in other words, arbitration agreements not dependent on the at-will employment relationship alone for consideration.") *(citing Sisneros v. Citadel Broadcasting Co.*, 2006-NMCA-102, ¶ 1, 142 P.3d 34 (reasoning that "if the parties in fact agreed to arbitrate their disputes, their agreement was not illusory as a matter of law") Id. ("But, as the court reasoned in *Piano*, discretionary, illusory promises of at-will employment cannot constitute consideration for a plaintiff's promise to submit claims to arbitration.") (citing <u>*Piano v. Premier Distributing Co.*</u>, 2005-NMCA-018, 107 P.3d 11).

[38] This is the agreement to provide at-will employment that UHC contends is consideration for Plaintiffs' agreement to arbitrate. <u>Exhibits</u> A, B, C at Section C.

arbitration and rejecting employer's contention that an employee's "continued employment manifests assent to the condition [of arbitration] and constitutes consideration"); Baker v. Bristol Care, Inc., 450 S.W.3d 770 (Mo. 2014) ("An offer of continued at-will employment is not valid consideration because the employer makes no legally enforceable promise to do or refrain from doing anything it is not already obligated to do."); Poole v. Incentives Unlimited, Inc., 525 S.E.2d 898, 901 (S.C. Ct. App. 1999) (holding that covenant not to compete, signed by at-will employee four years after she was hired, was illusory because "even though [plaintiff] signed the covenant, [the employer] retained the right to discharge her at any time"); Martin v. Credit Prot. Ass'n, Inc., 793 S.W.2d 667, 670 (Tex. 1990) (finding that covenant not to compete, signed after the employee's employment began, "was not supported by independent valuable consideration").