# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DANA FEDOR, AND ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITEDHEALTHCARE, INC., and UNITED HEALTHCARE SERVICES, INC.,<br><br>    Defendants. | Docket No. 1:17-cv-13-MV/KBM |

## DEFENDANTS' REPLY TO PLAINTIFF'S SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS

**I.    INTRODUCTION**

In its moving papers, UnitedHealthcare demonstrated that Plaintiff and the Opt-In Plaintiffs are bound individually to arbitrate their claims under the 2016 Arbitration Policy. UnitedHealthcare established that Plaintiff and the Opt-In Plaintiffs had actual notice of the slightly revised policy when it was posted on UnitedHealthcare's internal intranet; they signaled their acceptance with their continued employment; and the policy was supported by consideration and mutual assent because both parties agreed to waive their right to court and instead arbitrate any employment-related dispute between them.

Plaintiff submits no evidence to dispute that the 2016 Arbitration Policy is the operative agreement <u>or</u> that it is unenforceable. Instead, she attempts to distract the Court by arguing that the 2006 Arbitration Policy, an earlier superseded version, is unenforceable. Plaintiff spends pages of her Supplemental Response to demonstrate that Plaintiff and the Opt-In Plaintiffs signed the 2006 and other superseded versions, and not the 2016 Arbitration Policy, but this

was clear from UnitedHealthcare's moving papers, and Plaintiff's suggestion that United Healthcare "tricked" the court or attempted to "sneak" the operative agreement before the court is not well taken.[1] In New Mexico and under the Federal Arbitration Act, a signature is not required to signal assent to an arbitration agreement and Plaintiff and the Opt-In Plaintiffs signaled their assent to the 2016 Arbitration Policy with their clear understanding of their arbitration obligations and continued employment. Thus, it is the 2006 Policy that is irrelevant to the issues before this Court, as are the 2012 and 2015 versions. The 2016 Arbitration Policy is the operative agreement, and as Plaintiff concedes, it is enforceable.

## II. LEGAL ARGUMENT

### A. Plaintiff Is Estopped from Contradicting Her Prior Opposition by Now Arguing She Is Not Bound by an Agreement to Arbitrate this Dispute.

The doctrine of judicial estoppel may be invoked to prevent a party from asserting claims inconsistent with claims that party has previously asserted with success. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). In considering the doctrine, the court considers whether (1) the party's present position is inconsistent with its prior position; (2) the party had success with the prior position; and (3) allowing the unfair position in the current proceeding would give the party an unfair advantage or impose an unfair detriment on the opposing party. *Id.* at 750-51. These flexible factors are not exhaustive. *Id.* at 751.

These factors are present here. In response to United Healthcare's first motion to compel arbitration under the Arbitration Agreement, Plaintiff's sole ground in opposition was that the Arbitration Agreement was unenforceable under *Morris v. Ernst & Young, LLP*, 834 F. 3d 975

---

[1] Despite her present indignation, Plaintiff raised no objection to the enforceability of the 2016 or any other version of the Arbitration Policy in opposition to United Healthcare's motion when she had the chance. Instead, she urged the Court to stay the litigation pending resolution of the class waiver in the agreements she is now attempting to avoid. If Plaintiff had grounds to argue that her promise to arbitrate these disputes was unenforceable, that was the time to do it.

(9th Cir. 2016) (*reversed by Epic Systems v. Lewis*, 138 S. Ct. 1612, 1632 (2018)). (*See* ECF No. 22 at 1-2 ("Plaintiff contends FLSA collective actions are protected, concerted activity under the NLRA. Defendant [sic] contests this assertion."); *see also id.* at 2 ("Rather than rehash and restate the arguments and authorities supporting Plaintiff's view in opposition to Defendants' Motion, Plaintiff refers the Court to the arguments and authorities in *Morris*, *Lewis*, and *Alternative Entertainment* and incorporates them by reference here as if fully set forth.").) Though Plaintiff later suggested in her Notice of Request for Clarification that she did not raise any other defenses "to preserve resources," <u>nowhere</u> in the Opposition did Plaintiff suggest the 2016 Arbitration Policy (or any other version) was unenforceable. (*See* ECF No. 30 at 2.) To the contrary, Plaintiff urged the Court to accept United Healthcare's alternative request for relief and stay the action "until the Supreme Court decides the issue in *Morris, et al.*" *Id.* at 3. If Plaintiff believed her promise to arbitrate this dispute was unenforceable because it was unsupported by consideration, there was no need to request a stay and doing so while waiting in the tall grass to bring these belated arguments must not now be condoned.

Plaintiff's request was successful; the court stayed its ruling pending the United States Supreme Court's consideration of the enforceability of class and collective action waivers. On May 21, 2018, the Supreme Court ruled that class and collective waivers like the one at issue here are enforceable. *See Epic Systems*, 138 S. Ct. at 1632. Only now, with her previous defense closed off, Plaintiff contends that no plaintiff is bound by an agreement to arbitrate at all. To allow Plaintiff to reverse course now would be unfair to UnitedHealthcare and this Court. Under Plaintiff's theory, the case has been unnecessarily stayed for over fifteen months. *Epic Systems* confirms that the Arbitration Policy is enforceable, and Plaintiff's gamesmanship has already rendered this case and this motion more time-consuming and costly than necessary. Plaintiff

should be judicially estopped from changing strategies in a second attempt to avoid her contractual obligation to arbitrate this dispute.

> **B. If the Court Believes Plaintiff Should Now Be Permitted to Argue She Is Not Bound by the 2016 Arbitration Policy, the Court Should Enforce the Parties' Agreement to Delegate this and Other Gateway Issues to the Arbitrator.**

The 2016 Arbitration Policy expressly states that except for the enforceability of the Class and Collective Action Waiver, any questions regarding formation or enforceability must be ***decided by the arbitrator*** and not the Court. (Sprau Decl. at ¶ 33, Ex. S at § B ("Covered claims include any disputes regarding the Policy or any portion of the Policy or its interpretation, ***enforceability, applicability, unconscionability, arbitrability or formation***, or whether the Policy or any portion of the Policy is void or voidable, with the exception noted in the Class and Representative Actions Waivers section below.") (emphasis added).) Though Plaintiff's sole argument in opposition to UnitedHealthcare's motion was the enforceability of the class and collective waiver, which is for this Court, Plaintiff's new theory is squarely for the arbitrator. Therefore, because there is no question that the class and collective waiver is enforceable (and Plaintiff does not argue otherwise), if Plaintiff is permitted now to contend for the first time that she is not bound by the 2016 Arbitration Policy, this Court should order Plaintiff and the Opt-In Plaintiffs to individual arbitration for the arbitrator to rule on these gateway issues.

Normally, in deciding whether to compel arbitration, a court is charged with determining two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). But there is an exception to this general rule when, like here, "the parties clearly and unmistakably provide otherwise." *AT&T Tech., Inc. v. Comm. Workers*, 475 U.S. 643, 649 (1986); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("The question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."). In such cases, the court examines the underlying contract to determine whether the parties have in fact agreed to commit these preliminary issues to the arbitrator.

*Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 70 (2013) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *see also Evangelical Lutheran Good Samaritan Society v. Telles,* Case No. 2:17-cv-00207-MCA-GJF, 2017 WL 4417606, *5-6 (D.N.M. Sept. 30, 2017).

Here, the parties have agreed that, aside from the Class Action Wavier, any dispute about the Policy's "interpretation, enforceability, applicability, unconscionability, arbitrability or formation" is for the arbitrator. (Sprau Decl. ¶ 33, Ex. S at § B.) Thus, through this broad "delegation" clause, the parties clearly and unmistakably provided that the arbitrator — and not a court — would decide the preliminary issues as to whether Plaintiff is bound by the 2016 Arbitration Policy. Therefore, based on the United State Supreme Court's controlling decision in *Rent-A-Center* and the above authority, any challenges to the enforceability or validity of the 2016 Arbitration Policy (aside from any challenge to the Class Action Waiver, which Plaintiff no longer challenges) must be submitted to arbitration.

### C. Each Plaintiff Is Bound by the 2016 Arbitration Policy.

Even if the Court were to consider Plaintiff's arguments itself, the result is the same; Plaintiff and the Opt-In Plaintiffs must individually arbitrate this dispute. Plaintiff devotes her Response to attempting to demonstrate that the versions of the Arbitration Policy she and the Opt-In Plaintiffs <u>signed</u> are unenforceable. Though UnitedHealthcare disagrees with this contention, it is well settled under the FAA that an arbitration agreement need not be signed to be enforceable. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011). Here, after the 2016 Arbitration Policy, which by its terms superseded any prior agreements, was distributed via United Healthcare's internal intranet in accordance with its terms and the company's regular practice, Plaintiff and the Opt-In Plaintiffs signaled their acceptance by continuing their employment beyond January 1, 2016. Thus, the earlier signed versions are irrelevant and the

2016 Arbitration Policy is the operative agreement.

In its moving papers, United Healthcare detailed the background of the parties' agreement to arbitrate. Plaintiff does not dispute that Plaintiff and the Opt-In Plaintiffs each signed a version of United Healthcare's Arbitration Policy agreeing to arbitrate the claims at issue here, and each version of the Arbitration Policy contained materially similar terms. (*See* Sprau Decl. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q.) Like the 2016 Policy, each signed Policy made clear that ***"[a]cceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy.***" (*Id.* at § A; *see also* Sprau Decl. ¶ 33, Ex. S at § A.) (emphasis in original). Like the 2016 Policy, each signed Policy expressly covers the claims asserted in the Complaint, and each Policy precludes a class or collective action, requiring only individual arbitration. (Sprau Decl. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q at §§ B, C; *see also* Sprau Decl. ¶ 33, Ex. S at §§ B, C.) The signed versions made clear that UnitedHealthcare would periodically update its Arbitration Policy, and notice of the revised version would be distributed via the company's internal intranet. (*See* Sprau Decl. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q at § D. Each version provided that it superseded any prior version. (Sprau Decl. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, Exs. A, C, E, G, I, K, M, O, Q at § E; *see also id.* at ¶ 33, Ex. S at § E.)

Under New Mexico law, a legally enforceable contract requires the existence of an offer, an acceptance, consideration and mutual assent. *Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 15, 302 P.3d 751, 775 (N.M. Ct. App. 2013). These elements are present here. Plaintiff and Opt-In Plaintiffs received notice of the 2016 Arbitration Policy. When Plaintiff and the Opt-In Plaintiffs signed the Arbitration Policy applicable at the time of their hire, they were put on notice that (1) they agreed to arbitrate any employment-related claims against UnitedHealthcare;

(2) continued employment constituted acceptance of the Policy; (3) UnitedHealthcare would periodically update the policy with at least 30-days' notice; and (4) UnitedHealthcare would post the most up-to-date version of the Arbitration Policy on the company's intranet. *Ballard v. Chavez*, 1994-NMSC-007, ¶ 8, 868 P.2d 646, 648 (N.M. 1994) (fundamental tenet of contract law "that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby"). Consistent with these terms, on November 25, 2015, more than 30 days before January 1, 2016, United Healthcare posted the slightly updated 2016 Arbitration Policy on the front page of the internal intranet, a hub of daily life at UnitedHealthcare that is accessed regularly by all employees, for reasons as varied as filling out Personal Time Off forms to checking to see what is for lunch at the cafeteria. Also consistent with the language in each Policy, after 30-days' notice, the 2016 Arbitration Policy was enacted on January 1, 2016. (*See id.* ¶ 33, Ex. S.) Plaintiff submits no evidence to dispute this, responding only with unsupported rhetoric that the current Policy is irrelevant.

Consistent with the terms of each Arbitration Policy, Plaintiff and Opt-In Plaintiffs accepted the minimally revised 2016 Arbitration Policy by their continued employment after being notified of the updated version. *See Medina v. Sunstate Realty, Inc.*, 1995-NMSC-002, ¶ 14, 119 N.M. 136, 139, 889 P.2d 171, 174 (acceptance may be express or implied by conduct); (Sprau Decl. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30, 33; Exs. A, C, E, G, I, K, M, O, Q, S at § A.) Each Plaintiff continued his or her employment with United Healthcare beyond January 1, 2016. (Sprau Decl. ¶¶ 8, 11, 14, 17, 20, 23, 26, 29, 32.)

Finally, as Plaintiff concedes in her response, the 2016 Arbitration Policy is supported by consideration and mutual assent. An agreement to arbitrate is supported by consideration when

the promise to arbitrate is mutual. *Luginbuhl*, 302 P.3d at 775-76; *Clark v. UnitedHealth Group, Inc.*, No. 13-0372, 2018 WL 2932735, *6 (D.N.M. June 12, 2018) (adopted by *Clark v. UnitedHealth Group, Inc.*, 2018 WL 3539817 (D.N.M. July 23, 2018)). The 2016 Arbitration Policy makes clear that the agreement to arbitrate is mutual. (Sprau Decl. ¶ 33, Ex. S at § E ("The mutual obligations by UnitedHealth Group and by employee to arbitrate differences provide consideration for each other.").) Plaintiff and Opt-In Plaintiffs are bound by the 2016 Arbitration Policy, which is the operative agreement.

None of Plaintiff's citations change this result because they all focus on an argument that the 2006, 2012, and 2015 Policies are unenforceable. For instance, Plaintiff cites repeatedly to *Clark*, which held that the 2006 Arbitration Policy was illusory and unsupported by consideration. 2018 WL 2932735 at *1-3. But *Clark* is irrelevant because it does not address the 2016 Arbitration Policy. The *Clark* court made clear that the <u>only</u> policy at issue was the 2006 Arbitration Policy; unlike here, the case was not a collective action and the plaintiff worked for United Healthcare for only approximately six months, during which the Policy was never modified. *Id.* at *1. Here, to the contrary, Plaintiff worked for United Healthcare for over three years and she remained employed after receiving notice of the 2016 Arbitration Policy, the most recent update. (Sprau Decl. ¶¶ 5, 6-8; *see also* FAC ¶¶ 1-3, 16.) In fact, United Healthcare modified the Policy at least twice during her employment. Every other Opt-In Plaintiff also continued their employment after receiving notice of the 2016 Arbitration Policy. Thus, despite Plaintiff's suggestion of impropriety, Mr. Sprau did not testify to the 2016 Arbitration Policy in *Clark* because it was not a collective action, and that plaintiff separated employment from United Healthcare well before the 2016 Arbitration Policy was enacted. *Clark*, 2018 WL 2932735, at *1 (noting that the plaintiff was employed only until April 9, 2012). (*See* ECF No. 38 at 8.)

Plaintiff also argues that continued at-will employment will not provide consideration for a contract. (ECF No. 38 at 17-18.) But Plaintiff has confused two issues. UnitedHealthcare does not contend that continued at-will employment provided consideration for the 2016 Arbitration Policy. Instead, Plaintiff and the Opt-In Plaintiffs signaled their <u>assent</u> to the 2016 Arbitration Policy by their continued employment. *See Medina v. Sunstate Realty, Inc.*, 1995-NMSC-002, ¶ 14, 119 N.M. 136, 139, 889 P.2d 171, 174 (acceptance may be express or implied by conduct). Plaintiff's contention regarding continued at-will employment and consideration is irrelevant.

In fact, Plaintiff does not even argue that the 2016 Arbitration Policy is illusory; to the contrary, she concedes it is enforceable. (ECF No. 38 at 8 ("A comparison of the Signed Agreements to the [2016 Arbitration Policy] shows that the [2016 Arbitration Policy] removed the elements of the Signed Agreements that render them unenforceable . . . .").) Instead, she attempts to dismiss it as irrelevant, but, as discussed in United Healthcare's moving papers and above, it is the operative agreement. Because Plaintiff and the Opt-In Plaintiffs received notice of the 2016 Arbitration Policy, signaled their acceptance by continuing their employment, and because it is supported by the consideration of mutual promises to arbitrate, the Court must compel Plaintiff and each opt-in individually to arbitrate their claims.

    **D.    The 2015 Arbitration Policy Was Not Illusory.**

Separately, though Plaintiff and all Opt-In Plaintiffs must be compelled to arbitrate their claims for the reasons set forth by UnitedHealthcare, Opt-In Plaintiffs Hays and Rice should be compelled individually to arbitrate their claims for the additional reason that they signed the 2015 Arbitration Policy, which is enforceable, even under *Clark.* Though Plaintiff cites no case for the proposition, Plaintiff argues that the 2015 Policy is illusory, despite the fact that it does not allow UnitedHealthcare the unfettered right to amend. The 2015 Policy specifically states

that "any amendments to the Policy made after a claim arises will not be applied to proceedings related to that claim." (Sprau Decl. ¶¶ 19, 22; Exs. J, L at § E.) Plaintiff acknowledges this additional language, but claims that though it may limit UnitedHealthcare from <u>modifying</u> the policy as to an already accrued claim, it does not prevent it from <u>terminating</u> the policy. Plaintiff's tortured reading is unsupported by the facts. Read as a whole, the provision makes clear that the Policy in effect at the time the claim arises will apply to the proceedings. This is "in no way illusory" because it restricts UnitedHealthcare's right to amend the agreement to arbitrate.[2] *Sisneros v. Citadel Broadcasting Company*, 2006-NMCA-102, ¶ 33, 140 N.M. 266, 142 P.3d 34. This is consideration for the agreement to arbitrate. *Id.* ¶ 34.

In sum, though Plaintiff and all Opt-In Plaintiffs should be compelled to individually arbitrate their claims, Opt-In Plaintiffs Hays and Rice should be compelled to individual arbitration for the additional reason that the 2015 Arbitration Policy is separately enforceable. (Sprau Dec. ¶¶ 19, 22, Exs. J, L.)

## III. CONCLUSION

Plaintiff and the Opt-In Plaintiffs should not be allowed to avoid their agreements to arbitrate their claims. If Plaintiff believed that she was not bound to arbitrate her claims, she could have, and was required to, raise that argument fifteen months ago in opposition to UnitedHealthcare's motion and avoided the stay. Plaintiff has submitted no evidence that the relevant 2016 Arbitration Policy is unenforceable. Because Plaintiff and each opt-in continued his or her employment after receiving notice of the 2016 Arbitration Policy, he or she signaled acceptance of the requirement to arbitrate, which was supported by consideration and mutual

---

[2] Consistent with the procedure described above, at the end of 2014, new employees and all current employees received notice of this 2015 Arbitration Policy, which confirmed that UnitedHealthcare could not change the Policy as to any accrued claim.

assent. Therefore, each Plaintiff individually should be compelled to arbitrate their claims.

DATED this 19th day of October, 2018.

LITTLER MENDELSON, P.C.

*/s/ Cory G. Walker*
Mark Ogden
mogden@littler.com
Cory G. Walker
cgwalker@littler.com
2425 E. Camelback Road
Suite 900
Phoenix, Arizona  85016
602.474.3600 (Telephone)
602.957.1801 (Facsimile)

*Attorneys for Defendants*

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following if CM/ECF registrants, and emailed a copy of same to any non-registrants this 19th day of October, 2018:

J. Derek Braziel
Jay Forester
Travis Gasper
LEE & BRAZIEL, L.L.P.
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202

Jack Siegel
SIEGEL LAW GROUP PLLC
10440 N. Central Expressway #1040
Dallas, Texas 75231

*Attorneys for Plaintiff*

*/s/ Cory G. Walker*

FIRMWIDE:158552950.6 047515.1352