IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANA FEDOR, AND ALL OTHERS
SIMILARLY SITUATED,

      Plaintiff,

v.                                            CV 17-13 MV/KBM

UNITED HEALTHCARE, INC., and
UNITED HEALTHCARE SERVICES, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion to Dismiss, Strike Class and Collective Action Claims, and Compel Arbitration, or, in the Alternative, Stay Proceedings [Doc. 16]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be granted.

## BACKGROUND

Plaintiff Dana Fedor worked for Defendants as a "Care Coordinator" from in or about November 2013, until on or about November 25, 2016. Doc. 16-1 at ¶¶ 7-8. Opt-in Plaintiffs Susan Davis, Donah E. Davison, Juliana J. Whitesell, Cindy L. Hays, Michelle Rios Rice, Ann E. Beauchamp, William E. Snyder, and Lisa Anne Salopek also formerly worked for Defendants as Care Coordinators. *Id.* at ¶¶ 9-32. Consistent with Defendants' policies, along with his or her offer letter, Defendants provided Plaintiff and Opt-in Plaintiffs with a copy of Defendants' then-current arbitration policy. *Id.* at ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30. Plaintiff and Opt-in Plaintiffs each logged onto Defendants' PeopleSoft Human Resources Management System and

1

electronically acknowledged receipt of, and agreement to, that arbitration policy, by clicking on the "I accept" button. *Id.* at ¶ 7, 10, 13, 16, 19, 22, 25, 28, 31.

Defendants periodically revise their arbitration policy, and on January 1, 2016, while Plaintiff and Opt-in Plaintiffs were still employed with Defendants, Defendants "issued" the most recent version of their arbitration policy (the "2016 Arbitration Policy"). *Id.* at ¶¶ 33, 8, 11, 14, 17, 20, 23, 26, 29, 32, 33. The 2016 Arbitration Policy states that it is a "binding contract between UnitedHealth Group and its employee," that "[a]cceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy," and that it "supersedes any and all prior versions and has been revised effective January 1, 2016." Doc. 16-2.

On March 28, 2017, Plaintiff commenced the instant action by filing her First Amended Class and Collective Action Complaint to recover overtime compensation from Defendants. Doc. 3. Plaintiff brings collective claims under the Fair Labor Standards Act and class action claims under New Mexico law, on behalf of herself and Opt-in Plaintiffs, who have consented to join the action. *Id.* at ¶¶ 34-35; Docs. 9-15. Arguing that this lawsuit violates the 2016 Arbitration Policy, which requires arbitration of the claims set forth in the Amended Complaint and which prohibits collective and class claims, Defendants filed the instant motion to compel Plaintiff and Opt-in Plaintiffs to individually arbitrate their claims. Plaintiff opposes the motion.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration provisions in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, such arbitration provisions "are valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA creates "a substantive rule applicable in state as well as federal courts." *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). To implement this substantive rule, "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" the federal district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Describing the FAA as "a liberal federal policy favoring arbitration," the Supreme Court has emphasized "the fundamental principle that arbitration is a matter of contract," and, accordingly, that "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Conception*, 131 S. Ct. 1740, 1745 (2011).

The FAA, however, "was not enacted to force parties to arbitrate in the absence of an agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997). Rather, Congress' concern "was to enforce private agreements into which parties had entered." *Id.* Accordingly, "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Id.* at 1287.

## DISCUSSION

Under the FAA, Defendants move to compel Plaintiff and Opt-in Plaintiffs to individually arbitrate the claims alleged in the Amended Complaint. In support of their motion, Defendants argue that the 2016 Arbitration Policy is valid and enforceable against Plaintiff and Opt-in Plaintiffs, that the claims alleged in the Amended Complaint fall within the scope of the 2016 Arbitration Policy, and that the 2016 Arbitration Policy prohibits Plaintiff and Opt-in Plaintiffs from pursuing class and collective claims. Plaintiff does not appear to dispute that her claims fall within the scope of the 2016 Arbitration Policy or that the 2016 Arbitration Policy

3

prohibits class and collective claims. Plaintiff does, however, dispute that the 2016 Arbitration Policy is valid and enforceable as to her and Opt-in Plaintiffs.

I. <u>Enforceability of the 2016 Arbitration Policy as to Plaintiff and Opt-in Plaintiffs</u>

Plaintiff argues that the 2016 Arbitration Policy is not enforceable against her or Opt-in Plaintiffs because there is no evidence that any of them "signed, read or even knew about this Policy." Doc. 38 at 7. Rather, Plaintiff explains, each of them indicated acceptance only to *prior versions* of Defendants' arbitration policy. It is those prior versions, Plaintiff argues, that are the operative documents here and, because each of those prior versions lacked valid consideration under New Mexico law, neither Plaintiff nor Opt-in Plaintiffs are bound by any valid, enforceable agreement to submit their claims to arbitration.

Plaintiff is correct that she and Opt-in Plaintiffs electronically agreed to prior versions of Defendants' arbitration policies. Specifically, Plaintiff and Opt-in Plaintiffs Davidson, Whitesell, and Snyder agreed to Defendant's 2012 arbitration policy; Opt-in Plaintiffs Davis and Salopek agreed to Defendant's 2006 arbitration policy; Opt-in Plaintiff Beauchamp agreed to Defendant's 2011 arbitration policy; and Opt-in Plaintiffs Hays and Rice agreed to Defendants' 2015 arbitration policy. Doc. 38 at 4. The Court agrees that, under New Mexico law, each of those prior versions contained provisions that would render those policies unenforceable for lack of valid consideration.

Specifically, the 2006, 2011, and 2012 arbitration policies each contain an identical provision entitled "Amendment or Termination of Arbitration Policy," stating that "UnitedHealth Group reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days' notice of its intent and the substance of any amendment, modification or termination of the Policy." Doc. 16-2. These policies contain a second

4

identical provision entitled "Effective Date," stating that "[a]ll arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration." *Id.* By giving Defendants the right to unilaterally amend or terminate the policy, while at the same time mandating that an employee's claim be arbitrated in accordance with the policy in effect on the date that the claim was *filed*, these policies entitled Defendants to unilaterally amend or terminate the policies after an employee's claim had *accrued*.

In *Flemma v. Halliburton Energy Servs., Inc.*, the New Mexico Supreme Court held that an arbitration agreement that allows an employer to unilaterally amend or terminate the agreement after an employee's claim has accrued fails for lack of consideration, because the employer's promise to arbitrate is illusory. 303 P.3d 814, 822 (N.M. 2013). The arbitration agreement at issue in *Flemma* allowed the employer to unilaterally amend or terminate it with 10 days' notice to current employees, and provided that no amendment or termination would apply to a dispute for which a proceeding had been *initiated*. *Id.* The terms of the agreement thus allowed Halliburton to amend the agreement *after* a claim had accrued, but *before* arbitration proceedings were initiated, a period during which "Halliburton [could] decide that it [did] not want to use alternative dispute resolution, or [might] alter the terms on which alternative dispute resolution is based." *Id.* The Court held that the agreement "fail[ed] for lack of consideration . . . because Halliburton's promise to arbitrate [was] illusory since Halliburton retain[ed] the right to unilaterally amend the agreement's terms after an employee's claim ha[d] accrued." *Id.*

Here, Defendant's 2006, 2011, and 2012 arbitration policies allowed Defendants to unilaterally amend or terminate the policy with 30 days' notice to current employees, and provided that no amendment or termination would apply to a dispute for which a demand for

5

arbitration had been filed.  Accordingly, as in *Flemma*, Defendants' prior policies left "a period of time between when a claim accrue[d] and when a proceeding [was] initiated, during which [Defendants] retain[ed] the authority to unilaterally amend the agreement."  *Id.* at 823.  Under *Flemma*, Defendants' 2006, 2011, and 2012 policies thus fail for lack of consideration because Defendants' promise to arbitrate was illusory.

While the provision entitled "Effective Date" was changed slightly in Defendants' 2015 arbitration policy, the modification was not sufficient to create a non-illusory promise to arbitrate.  The 2015 arbitration policy contains the same "Amendment or Termination of Arbitration Policy" provision as did the 2006, 2011, and 2012 policies, reserving to Defendants "the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days' notice of its intent and the substance of any amendment, modification or termination of the Policy."  Doc. 16-2.  The "Effective Date" provision in the 2015 policy was modified to provide that "[a]ll arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration, *except that any amendments to the Policy made after a claim arises will not be applied to proceedings related to that claim*."  *Id.* (emphasis added).

By adding the limiting language to the "Effective Date" provision, Defendants partially fixed the deficiency of their prior policies by ensuring that no *amendments* could be made after an employee's claim arose.  The 2015 policy, however, did not equally limit Defendants' otherwise unfettered right to unilaterally *terminate* the policy after an employee's claim arose. Accordingly, as was the case in *Flemma*, the terms of the 2015 policy continued to allow Defendants to terminate the policy *after* a claim had accrued, but *before* arbitration proceedings were initiated, a period during which Defendants "[could] decide that [they did] not want to use

6

alternative dispute resolution." *Flemma*, 303 P.3d at 822.  Defendant's 2015 policy thus also fails for lack of consideration because Defendants' promise to arbitrate was illusory.

This Court's conclusion that the versions of Defendants' arbitration policies to which Plaintiff and Opt-in Plaintiffs agreed are unenforceable for lack of valid consideration does not end the inquiry.  Defendants represent that, on January 1, 2016, while Plaintiff and Opt-in Plaintiffs were still employed with Defendants, Defendants "issued" the 2016 Arbitration Policy. The 2016 Arbitration Policy states that it is a "binding contract between UnitedHealth Group and its employee," that "[a]cceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy," and that it "supersedes any and all prior versions and has been revised effective January 1, 2016."  The relevant question thus remaining is whether, despite the unenforceability of the prior versions of Defendants' arbitration policies to which Plaintiff and Opt-in Plaintiffs agreed, the 2016 Arbitration Policy is applicable and enforceable as to Plaintiff and Opt-in Plaintiffs.

The Court, however, may not answer this question, because the 2016 Arbitration Policy specifically delegates this threshold issue of arbitrability to the arbitrator.  The 2016 Arbitration Policy contains a "delegation provision" stating that the claims covered by the Policy "include any disputes regarding the Policy or any portion of the Policy or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Policy or any portion of the Policy is void or voidable." Doc. 16-2.  The controversy over whether the 2016 Arbitration Policy is applicable and enforceable as to Plaintiff and Opt-in Plaintiffs falls squarely within this delegation provision.  Defendants ask the Court to enforce the delegation provision and, in keeping with that provision, compel Plaintiff to arbitrate the issue of the applicability and enforceability of the 2016 Arbitration Policy.  Doc. 40 at 4-5.

7

The Supreme Court has consistently "held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* Accordingly, when the parties' agreement contains a provision that delegates the arbitrability question to an arbitrator "by 'clear and unmistakable evidence,'" the "court may not override the contract," and "possesses no power to decide the arbitrability issue." *Id.* at 529-30. Importantly, unless the party opposing arbitration "challenge[s] the delegation provision specifically," as opposed to "challeng[ing] only the validity of the contract as a whole," this Court "must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

Here, the 2016 Arbitration Policy clearly and unmistakably delegates to the arbitrator any dispute as to the applicability and enforceability of the 2016 Arbitration Policy. In her opposition, Plaintiff does not challenge this delegation provision and, indeed does not "even mention the delegation provision." *Id.* Rather, Plaintiff challenges "only the validity of the contract as a whole." *Id.* As a result, this Court is constrained to treat the delegation provision as valid and enforce it, leaving any challenge to the applicability and enforceability of the 2016 Arbitration Policy – due to the unenforceability of Defendants' prior policies to which Plaintiff and Opt-in Plaintiffs agreed or otherwise – for the arbitrator. *See id.*

II.      <u>Dismissal of this Action</u>

Defendants request that this Court compel Plaintiff and Opt-in Plaintiffs to arbitrate their claims and dismiss this action. Because the Court agrees that Plaintiff and Opt-in Plaintiffs must submit their claims to arbitration, and because neither party has requested a stay rather than dismissal of this action, the Court finds that dismissal is proper. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995) (finding that district court did not err in dismissing action where defendant moved to compel arbitration and instead of requesting a stay pending such arbitration, requested dismissal of plaintiff's claims).

**CONCLUSION**

For the reasons set forth above the issue of whether the 2016 Arbitration Policy is enforceable as to Plaintiff and Opt-in Plaintiffs is for the arbitrator, rather than this Court, to determine, and the Court must defer that decision to the arbitrator. Accordingly, no basis exists for the Court to deny Defendants' motion to compel arbitration and dismiss this action.

**IT IS THEREFORE ORDERED** that Motion to Dismiss, Strike Class and Collective Action Claims, and Compel Arbitration, or, in the Alternative, Stay Proceedings [Doc. 16] is **GRANTED** and this case is **DISMISSED.**

DATED this 18th day of March, 2019.

_____
MARTHA VAZQUEZ
United States District Judge