# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DANA FEDOR, AND ALL OTHERS
SIMILARLY SITUATED,

      Plaintiff,

v.                                                                 CV 17-13 MV/KBM

UNITED HEALTHCARE, INC., and
UNITED HEALTHCARE SERVICES, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion to Dismiss, Strike Class and Collective Action Claims, and Compel Arbitration, or, in the Alternative, Stay Proceedings [Doc. 16]. The Court, having considered the Motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is well-taken only in part, and thus will be granted in part and denied in part.

## BACKGROUND

Plaintiff Dana Fedor worked for Defendants as a "Care Coordinator" from in or about November 2013 until on or about November 25, 2016. Doc. 16-1 at ¶¶ 7-8. Opt-in Plaintiffs Susan Davis, Donah E. Davison, Juliana J. Whitesell, Cindy L. Hays, Michelle Rios Rice, Ann E. Beauchamp, William E. Snyder, and Lisa Anne Salopek also formerly worked for Defendants as Care Coordinators. *Id.* at ¶¶ 9-32. Consistent with Defendants' policies, along with his or her offer letter, Defendants provided Plaintiff and Opt-in Plaintiffs with a copy of Defendants' then-current arbitration policy. *Id.* at ¶¶ 6, 9, 12, 15, 18, 21, 24, 27, 30. Plaintiff and Opt-in Plaintiffs each logged onto Defendants' PeopleSoft Human Resources Management System and

electronically acknowledged receipt of, and agreement to, that arbitration policy, by clicking on the "I accept" button. *Id.* at ¶ 7, 10, 13, 16, 19, 22, 25, 28, 31.

Defendants periodically revise their arbitration policy, and on January 1, 2016, while Plaintiff and Opt-in Plaintiffs were still employed with Defendants, Defendants "issued" the most recent version of their arbitration policy (the "2016 Policy"). *Id.* at ¶¶ 33, 8, 11, 14, 17, 20, 23, 26, 29, 32, 33. The 2016 Policy states that it is a "binding contract between UnitedHealth Group and its employee," that "[a]cceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy," and that it "supersedes any and all prior versions and has been revised effective January 1, 2016." Doc. 16-2.

On March 28, 2017, Plaintiff commenced the instant action by filing her First Amended Class and Collective Action Complaint to recover overtime compensation from Defendants. Doc. 3. Plaintiff brings collective claims under the Fair Labor Standards Act and class action claims under New Mexico law, on behalf of herself and Opt-in Plaintiffs, who have consented to join the action (collectively, "Plaintiffs"). *Id.* at ¶¶ 34-35; Docs. 9-15. Arguing that this lawsuit violates the 2016 Policy, which requires arbitration of the claims set forth in the Amended Complaint and which prohibits collective and class claims, Defendants filed the instant motion to compel Plaintiffs to individually arbitrate their claims. Plaintiffs opposed the motion, arguing that the 2016 Policy is not enforceable against them because there is no evidence that any of them "signed, read or even knew about this Policy." Doc. 38 at 7. Rather, Plaintiffs explained, each of them indicated acceptance only to *prior versions* of Defendants' arbitration policy (collectively, the "Earlier Policies"), each of which lacked valid consideration under New Mexico law and thus were not valid, enforceable arbitration agreements.

2

In a Memorandum Opinion and Order entered March 18, 2019 ("March 2019 Opinion"), the Court agreed with Plaintiffs that they electronically agreed to Earlier Policies and that, under New Mexico law, each of the Earlier Policies contained provisions that would render them unenforceable for lack of valid consideration. Doc. 42 at 4. The Court, however, explained that its conclusion that the Earlier Policies are unenforceable did not end the inquiry. *Id.* at 7. Specifically, the Court pointed to Defendants' representation that, on January 1, 2016, while Plaintiffs were still employed with Defendants, Defendants "issued" the 2016 Policy. *Id.* In turn, the 2016 Policy states that it is a "binding contract between UnitedHealth Group and its employee," that "[a]cceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy," and that it "supersedes any and all prior versions and has been revised effective January 1, 2016." *Id.* Accordingly, the Court found that the relevant question thus remained as to whether, despite the unenforceability of the Earlier Policies, the 2016 Policy was applicable and enforceable as to Plaintiffs. *Id.*

The Court, however, decided that it was not authorized to answer this question, because the 2016 Policy specifically delegates the threshold issue of arbitrability to the arbitrator. *Id.* Specifically, the 2016 Policy contains a "delegation provision" stating that the claims covered therein "include any disputes regarding the Policy or any portion of the Policy or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Policy or any portion of the Policy is void or voidable." *Id*. The Court found that the controversy over whether the 2016 Policy is applicable and enforceable as to Plaintiffs falls squarely within this delegation provision. *Id.* Accordingly, and applying what it interpreted as controlling, on point authority, the Court granted Defendants' request that the Court enforce the delegation provision and, in keeping with that provision, compel Plaintiffs to arbitrate the

3

issue of the applicability and enforceability of the 2016 Policy. *Id.* at 7-9 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019), for the proposition that the Supreme Court has consistently "held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). The Court thus compelled arbitration and entered a judgment ("Judgment") dismissing the case. Doc. 43.

Plaintiff appealed the March 2019 Opinion and Judgment, arguing that this Court "impermissibly compelled arbitration before first finding that she and UHC had indeed formed the arbitration agreement underlying the district court's decision." *Fedor v. United Healthcare*, 976 F.3d 1100, 1100 (10th Cir. 2020). The Tenth Circuit agreed, concluding that "[t]he issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged the clause." *Id.* at 1106. Applying this principle to the facts here, the Court found that, because Plaintiff claims "that neither she nor the other class members read or accepted the 2016 arbitration agreement, [she] raised an issue of formation which . . . cannot be delegated to an arbitrator." *Id.* at 1106-07. The Court also rejected Defendants' "arguments to affirm on the alternate grounds that the prior arbitration agreements were valid and that the plaintiffs implicitly agreed to arbitrate any claims against UHC by commencing employment with the company," explaining that "because affirmance on these grounds would enlarge UHC's rights, UHC [could have] raise[d] them only through cross-appeal." *Id.* at 1107. The Court vacated the Judgment and remanded "for the district court to determine if Fedor and UHC formed the 2016 arbitration agreement." *Id.*

4

In accordance with the Tenth Circuit's directive, this Court entered an Order on October 20, 2020, noting that, "[o]n remand, the question before the Court [] is whether, despite the unenforceability of the prior versions of Defendants' arbitration policies to which Plaintiff and Opt-in Plaintiffs agreed, Plaintiff and/or the Opt-in Plaintiffs 'formed' the 2016 Arbitration Policy such that the 2016 Arbitration Policy is applicable and enforceable as to Plaintiff and Opt-in Plaintiffs." Doc. 50. In order to answer this question, the Court directed the parties to submit "memoranda of law addressing whether, despite the unenforceability of the prior versions of Defendants' arbitration policies to which Plaintiff and Opt-in Plaintiffs agreed, Plaintiff and/or the Opt-in Plaintiffs 'formed' the 2016 Arbitration Policy such that the 2016 Arbitration Policy is applicable and enforceable as to Plaintiff and Opt-in Plaintiffs." *Id.* Briefing by the parties followed. *See* Docs. 58, 59, 64, 65, 70, 71.

## DISCUSSION

Plaintiff argues that neither she nor the Opt-in Plaintiffs can be compelled to arbitrate her claims against Defendants, because Defendants cannot meet their burden of showing that the 2016 Policy is a legally binding contract formed between the parties. Defendants disagree, arguing that the 2016 Policy formed an agreement to arbitrate between each Plaintiff and United Healthcare and that, even if it did not, Plaintiffs should be compelled to arbitrate either under the Earlier Policies or in accordance with the letters that offered them employment ("Offer Letters"). As set forth herein, with the exception of Opt-in Plaintiff Hays, who undisputedly has now signed the 2016 Policy, the Court agrees with Plaintiff that neither she nor the remainder of the Opt-in Plaintiffs can be compelled to arbitrate her claims against Defendants.

I.   The 2016 Policy

   A.   Opt-in Plaintiff Hays

The undisputed evidence demonstrates that Hays has been rehired by Defendants and, in connection with her rehire, agreed to the 2016 Policy on June 26, 2017. Doc. 58 at 10; Doc. 65 at 2. Defendants argue that Hays thus must be compelled to arbitrate her claims. Doc. 58. Plaintiff does not appear to disagree. Doc. 65 at 2 ("[T]o the extent the Court compels arbitration based on the 2016 Policy, the order should be limited to arbitration of Opt-in Plaintiff Hays' claims only."). The Court thus will compel Hays to arbitrate her claims against Defendants.

   B.   Plaintiff and the Remainder of the Opt-in Plaintiffs

Defendants contend that the 2016 Policy was "formed" as to Plaintiffs because they received notice thereof "in accordance with the procedure agreed to by Plaintiffs" and subsequently "accepted" "the new terms" of the 2016 Policy by continuing their employment. Doc. 58 at 10-16. Specifically, Defendants assert that "[e]ach of the contracts signed by Plaintiffs detailed [the] procedure" by which Defendants "provide[d] actual notice of the revised Policy." *Id.* at 10. According to Defendants, by assenting to the Earlier Policies, "Plaintiffs had already agreed to the procedure that UnitedHealthcare followed" in implementing the 2016 Policy. *Id.* at 11. Further, Defendants assert that because "Plaintiffs had accepted employment on the condition of arbitration and had already signed an agreement to arbitrate with nearly identical terms," their continued employment after notice of the 2016 Policy constitutes acceptance thereof. *Id.* at 14.

In short, Defendants contend that because Plaintiffs agreed to the Earlier Policies, and because the terms of those policies outlined both the form of notice that would be made of

6

modifications to the policy and the fact that continued employment would be deemed acceptance of such modifications, Plaintiffs are bound, by their continued employment, to the modifications memorialized in the 2016 Policy. The entirety of Defendant's argument that the 2016 Policy was "formed" thus relies solely on the terms of the Earlier Policies, and thus presupposes that Plaintiffs are bound by the terms of those policies. But as this Court has already found, the Earlier Policies are neither valid nor enforceable. Doc. 42 at 4-7. It follows that Plaintiffs cannot be bound by the terms of those Earlier Policies. And because they cannot be bound by the terms of those Earlier Policies, there is no basis to find that, by continuing employment after receiving notice of the modified 2016 Policy, Plaintiffs agreed to be bound by the terms of the 2016 Policy.

Defendants, however, ask the Court to revisit its determination that the Earlier Policies lacked valid consideration and thus were unenforceable. The Court recognizes that it is entitled to reconsider its determination. Upon such reconsideration, however, the Court does not reach a different conclusion.

As discussed in the March 2019 Opinion, Plaintiff and Opt-in Plaintiffs Davidson, Whitesell, and Snyder agreed to Defendants' 2012 arbitration policy; Opt-in Plaintiffs Davis and Salopek agreed to Defendants' 2006 arbitration policy; Opt-in Plaintiff Beauchamp agreed to Defendants' 2011 arbitration policy; and Opt-in Plaintiff Rice agreed to Defendants' 2015 arbitration policy. Doc. 38 at 4. The 2006, 2011, and 2012 arbitration policies each contain an identical provision entitled "Amendment or Termination of Arbitration Policy," stating that "UnitedHealth Group reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days' notice of its intent and the substance of any amendment, modification or termination of the Policy." Doc. 16-2. These policies

contain a second identical provision entitled "Effective Date," stating that "[a]ll arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration." *Id*. By giving Defendants the right to unilaterally amend or terminate the policy, while at the same time mandating that an employee's claim be arbitrated in accordance with the policy in effect on the date that the claim was *filed*, these policies entitled Defendants to unilaterally amend or terminate the policies after an employee's claim had *accrued*.

In *Flemma v. Halliburton Energy Servs., Inc*., the New Mexico Supreme Court held that an arbitration agreement that allows an employer to unilaterally amend or terminate the agreement after an employee's claim has accrued fails for lack of consideration, because the employer's promise to arbitrate is illusory. 303 P.3d 814, 822 (N.M. 2013). The arbitration agreement at issue in *Flemma* allowed the employer to unilaterally amend or terminate it with 10 days' notice to current employees, and provided that no amendment or termination would apply to a dispute for which a proceeding had been *initiated*. *Id*. The terms of the agreement thus allowed Halliburton to amend the agreement *after* a claim had accrued, but *before* arbitration proceedings were initiated, a period during which "Halliburton [could] decide that it [did] not want to use alternative dispute resolution, or [might] alter the terms on which alternative dispute resolution is based." *Id.* The Court held that the agreement "fail[ed] for lack of consideration . . . because Halliburton's promise to arbitrate [was] illusory since Halliburton retain[ed] the right to unilaterally amend the agreement's terms after an employee's claim ha[d] accrued." *Id.*

Here, Defendant's 2006, 2011, and 2012 arbitration policies allowed Defendants to unilaterally amend or terminate the policy with 30 days' notice to current employees, and provided that no amendment or termination would apply to a dispute for which a demand for

8

arbitration had been filed. Accordingly, as in *Flemma*, Defendants' prior policies left "a period of time between when a claim accrue[d] and when a proceeding [was] initiated, during which [Defendants] retain[ed] the authority to unilaterally amend the agreement." *Id.* at 823. Under *Flemma*, the 2006, 2011, and 2012 policies contained an illusory promise to arbitrate that provided no consideration in exchange for Plaintiffs' agreement to submit to arbitration.

While the provision entitled "Effective Date" was changed slightly in Defendants' 2015 arbitration policy, the modification was not sufficient to create a non-illusory promise to arbitrate. The 2015 arbitration policy contains the same "Amendment or Termination of Arbitration Policy" provision as did the 2006, 2011, and 2012 policies, reserving to Defendants "the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days' notice of its intent and the substance of any amendment, modification or termination of the Policy." Doc. 16-2. The "Effective Date" provision in the 2015 policy was modified to provide that "[a]ll arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration, *except that any amendments to the Policy made after a claim arises will not be applied to proceedings related to that claim*." *Id.* (emphasis added).

By adding the limiting language to the "Effective Date" provision, Defendants partially fixed the deficiency of their prior policies by ensuring that no *amendments* could be made after an employee's claim arose. The 2015 policy, however, did not equally limit Defendants' otherwise unfettered right to unilaterally *terminate* the policy after an employee's claim arose. Accordingly, as was the case in *Flemma*, the terms of the 2015 policy continued to allow Defendants to terminate the policy *after* a claim had accrued, but *before* arbitration proceedings were initiated, a period during which Defendants "[could] decide that [they did] not want to use

9

alternative dispute resolution." *Flemma*, 303 P.3d at 822. In the 2015 policy, Defendants' promise to arbitrate thus remained illusory and did not constitute consideration in exchange for Plaintiffs' agreement to submit to arbitration.

In their instant briefing, Defendants argue that the illusory nature of the promises in the Earlier Policies do not render them unenforceable because they are supported by another form of consideration, namely, the offer of new employment. Doc. 58 at 23. While New Mexico courts have determined that "*continued* at-will employment, without more, does *not* constitute consideration," see *Piano v. Premier Distrib. Co.*, 107 P.3d 11 (N.M. Ct. App. 2004), they have not equally decided whether "an offer of new at-will employment may constitute consideration for an arbitration agreement at the inception of the parties' employment relationship," or whether "a promise of new at-will employment is an illusory promise." *Clark v. UnitedHealth Group, Inc.*, No. 13-cv-0372, 2018 WL 2932735, at *4 (D.N.M. Jun. 12, 2018) (emphasis in original).

Defendants correctly note that in three decisions, two judges from this district, namely Judge Browning and Judge Lynch, drew "a distinction between the enforceability of promises made at the inception of the at-will employment relationship and the enforceability of those made after that relationship has commenced." *Id.* at *5. Specifically, those decisions hold that, while under New Mexico law the promise of continued employment may not constitute consideration, the promise of future – albeit at-will – employment by an employer may serve as consideration. See *Laurich v. Red Lobster Restaurants, LLC,* 295 F. Supp. 3d 1186, 1217 (D.N.M. 2017) (finding that employer "provided consideration by [] agreeing to arbitrate certain claims outside of the courtroom and to employ" plaintiff); *Parrish v. Valero Retail Holdings, Inc.,* 727 F. Supp. 2d 1266, 1278 (D.N.M. 2010) ("[A]n application for employment containing an agreement to arbitrate if offered employment is fundamentally different than an arbitration

10

agreement introduced after employment has started and based on consideration of continued at-will employment. The bargained-for exchange is the offer of employment in exchange for signing an agreement to participate in the Dialogue plan. Such an agreement is not illusory."); *Boyd v. Springleaf Fin. Mgmt. Corp.*, 16-cv-814, 2016 WL 5946912, at *6 (D.N.M. Sept. 9, 2016) ("Unlike the plaintiff in *Piano*, who was presented with the arbitration agreement two years after starting employment, Boyd signed the Employee Acknowledgement one day after being hired. At best, it stretches credulity to believe Boyd's argument that she was continuing at-will employment by signing the Employee Acknowledgement.").

But as Defendants also recognize, in her Proposed Findings and Disposition in *Clark*, a third judge from this district, namely, Judge Molzen, reached a different conclusion, which ultimately was adopted by this Court. *See Clark v. UnitedHealth Group, Inc.*, 13-cv-372 MV/CG, 2018 WL 3539817 (D.N.M. July 23, 2018). In *Clark*, Judge Molzen explained that "because an employer can terminate an at-will employment relationship at any time, including immediately, an offer of at-will employment strikes this Court as a text-book illusory promise. It binds neither party to any future conduct." 2018 WL 2932735, at *5. Judge Molzen reasoned that

> the timing of a promise of at-will employment – whether made at the inception of the employment relationship or after it is already underway – is immaterial to the illusory nature of that promise. By definition, offers of new *and* continued at-will employment fail to place constraints on an offering employer's actions, leaving the employers' decisions to commence or continue employment entirely discretionary.

*Id.* at 6 (emphasis in original). For this reason, Judge Molzen expressed her hesitation "to carve out an exception to ordinary principles of contract law without straightforward direction from New Mexico Courts," noting that "if the court's rationale in *Piano* is any indication, New

11

Mexico courts are not likely to except offers of new at-will employment from the requirement that consideration be non-illusory." *Id.*

Defendants argue that this Court should follow *Laurich*, *Parrish*, and *Boyd*, and hold that, "since Plaintiffs accepted [the Earlier Policies] as a condition of their employment when they reported to work on the first day, they are supported by the consideration of new at-will employment." Doc. 58 at 26. The Court, however, finds *Clark* to be the more persuasive authority. As Judge Molzen observed, "[t]o hold that a promise of *new* at-will employment constitutes consideration, where a promise of *continued* at-will employment does not, would invoke a fallacy." 2018 WL 2932735, at *5 (emphasis in original). For purposes of determining whether an employer has offered valid consideration in exchange for an employee's promise to submit to arbitration, the Court does not see – and, perhaps more importantly, does not believe that the New Mexico courts would see – a reasoned distinction between a promise of future at-will employment and a promise of continued at-will employment. Accordingly, the Court declines to find that Defendants' initial offer of employment to Plaintiffs constituted valid consideration for their agreement to submit to arbitration.

Because Defendants' offer of new employment does not constitute consideration, and because, as discussed above, the Earlier Policies are not otherwise supported by valid consideration, there is no basis for the Court to reverse its prior determination that the Earlier Policies are unenforceable. And because Defendants' argument as to the formation of the 2016 Policy depends entirely on the enforceability of those Earlier Policies, that argument necessarily must fail. Defendants thus have provided no basis for the Court to find that the 2016 Policy was formed as to Plaintiffs.

II.     The Earlier Policies

Defendants argue that, if the Court finds that the 2016 Policy was not formed as to Plaintiffs, then "it did not supersede the prior signed Policies, and those contracts now must be enforced."  Doc. 58 at 19.  In so arguing, Defendants note that the Court's previous finding that the Earlier Policies were unenforceable is not binding and urge the Court to delegate to the arbitrator the question of enforceability or, if the Court finds such delegation improper, to conclude that the Earlier Policies were based on valid consideration, namely, the offer of new employment.  *Id.* at 19-26.

A.      Delegation to the Arbitrator

In support of their argument that the Court must delegate to the arbitrator the issue of whether the Earlier Policies are based on valid consideration, Defendants assert that the Earlier Policies indicate that they are "governed by the AAA Rules."  *Id.* at 21.  In turn, Rule 6 of the AAA Rules provides that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  *Id.*  The reference to the AAA Rules in the Earlier Policies, Defendants conclude, thus means that the issue of the validity of those policies must be delegated to the arbitrator.

The parties to an arbitration agreement "may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Henry Schein*, 139 S. Ct. at 529.  An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  *Id.*

13

Accordingly, when the parties' agreement contains a provision that delegates the arbitrability question to an arbitrator "by 'clear and unmistakable evidence,'" the "court may not override the contract," and "possesses no power to decide the arbitrability issue." *Id.* at 529-30.

Contrary to Defendants' argument, however, the Earlier Policies do *not* indicate that they are to be governed by the AAA rules. Rather, each of those Policies provides that "[t]he rules and procedures to be used by the parties are *generally based on* the Employment Dispute Resolution Rules" of the AAA. Doc. 16-2 at 29, 52, 90 (emphasis added). Indeed, each of those Policies also provides that "UnitedHealth Group has modified the rules and procedures in certain [unidentified] respects." *Id.* The language of the Earlier Policies that the applicable rules and procedures are "generally based on" the AAA rules does not amount to a delegation clause, as it does not demonstrate by "clear and unmistakable evidence" that the parties "delegate[d] the arbitrability question to an arbitrator." *Henry Schein*, at 139 S. Ct. at 529-30.

Indeed, the Tenth Circuit found that the 2016 Policy differed from the Earlier Policies for the very reason that, unlike the Earlier Policies, "it contained a 'delegation clause' establishing that an arbitrator – instead of a court – would resolve disputes regarding the policy's 'interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Policy or any portion of the Policy is void or voidable.'" *Fedor*, 976 F.3d at 1100. The Court specifically stated that "[n]one of the three preceding versions contained such a delegation clause." *Id.*

The Tenth Circuit has counseled that the district court is not to "assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id*. at 1106 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Indeed, "a court cannot order arbitration of a particular dispute unless it is satisfied that the parties agreed

14

to arbitrate *that dispute*." *Fedor*, 976 F.3d at 1106 (quoting *Granite Rock Co. v Int'l Bhd. of Teamsters*, 561 U.S. 287, 27 (2010) (emphasis in original)). Because there is no "provision specifically committing" disputes over the enforceability of the Earlier Policies to an arbitrator, and because the enforceability of those policies is squarely in issue here, this Court may not delegate to the arbitrator the issue of whether the Earlier Policies are unenforceable for lack of consideration. *Fedor*, 976 F.3d at 1106 (quoting *Granite Rock*, 561 U.S. at 297, 299).

      B.      <u>Enforceability of the Earlier Policies</u>

As discussed above in the context of determining whether the 2016 Policy was formed as to Plaintiffs, the Court finds unavailing Defendants' contention that their offer to Plaintiffs of new employment constitutes valid consideration in exchange for Plaintiffs' agreement to submit to arbitration. Because Defendants' offer of new employment does not constitute consideration, and because, as discussed above, the Earlier Policies are not otherwise supported by valid consideration, the Court finds, as it did previously, that the Earlier Policies are unenforceable for lack of consideration. It follows that Defendants may not invoke the terms of the Earlier Policies to compel Plaintiffs to arbitrate their claims against them.

III.    <u>The Offer Letters</u>

Defendants argue that Plaintiffs should be compelled to arbitrate their claims because they each received an "Offer Letter" that advised them that their "agreement to be bound by the terms of the [enclosed arbitration policy] is a condition of [their] employment." Doc. 58 at 26-29; Doc. 58-7 at 5. As an initial matter, the Court cannot agree that the Offer Letter is a free-standing arbitration agreement. It appears clear from the language of the letter (which addresses several issues in addition to referencing the enclosed arbitration policy) that its purpose is, in part, to alert the recipient that an arbitration policy *is enclosed* and that the

15

*enclosed policy* "is a binding contract" to which the recipient must agree as a condition of employment.   Doc. 58-7 at 5.   Importantly, the only mention of a mutual obligation to arbitrate specifically references the obligation set forth in the enclosed policy.   *Id.*   In short, the Offer Letter contains no promise of a mutual obligation to arbitrate separate and apart from that set forth in the Earlier Policies, which the Court has found to be illusory.   Further, as discussed above, the offer of at-will employment is not valid consideration for an employee's agreement to submit to arbitration.   Thus, to the extent that the Offer Letter offers employment in exchange for the recipients' promise to arbitrate, it lacks valid consideration.   Accordingly, the Offer Letter provides no basis for the Court to compel Plaintiffs to arbitrate their claims against Defendants.

## CONCLUSION

Opt-in Plaintiff Hays has agreed to the 2016 Policy, and thus is bound by the 2016 Policy to submit her claims against Defendants to arbitration.   The 2016 Policy was not formed as to Plaintiff or any of the other Opt-in Plaintiffs, and thus neither Plaintiff nor any of the other Opt-in Plaintiffs may be compelled pursuant to the 2016 Policy to submit their claims against Defendants to arbitration.   The Earlier Policies are unenforceable for lack of consideration, and thus neither Plaintiff nor any of the Opt-in Plaintiffs may be compelled pursuant to the Earlier Policies to submit their claims against Defendants to arbitration.   The Offer Letters sent to Plaintiff and Opt-in Plaintiffs prior to their employment do not constitute separate, enforceable agreements to arbitrate, and thus neither Plaintiff nor any of the Opt-in Plaintiffs may be compelled pursuant to the Offer Letters that they received to submit their claims against Defendants to arbitration.

**IT IS THEREFORE ORDERED** that Motion to Dismiss, Strike Class and Collective Action Claims, and Compel Arbitration, or, in the Alternative, Stay Proceedings [Doc. 16] is GRANTED in part and DENIED in part, as follows: Opt-in Plaintiff Cindy L. Hays must submit her claims against Defendants to arbitration, but neither Plaintiff nor the remaining Opt-In Plaintiffs must submit their claims against Defendants to arbitration. As to Plaintiff and all Opt-in Plaintiffs other than Hays, Defendants are not entitled to any of the relief sought in their Motion.

DATED this 6th day of May 2021.

_____
MARTHA VAZQUEZ
United States District Judge