IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DANA FEDOR, AND ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITEDHEALTHCARE, INC., and UNITED HEALTHCARE SERVICES, INC.,<br><br>    Defendants. | Docket No. 1:17-cv-13-MV/KBM |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Defendants' untimely[1] motion argues that (1) the parole evidence rule requires the Court to ignore the parties' negotiated agreement regarding the scope of the settlement class and (2) Defendants satisfied their obligations under the settlement agreement by making full payments the individuals identified in the agreement. Both of these arguments fail. The parole evidence rule cannot be used to exclude evidence of a misrepresentation that induced a party to enter a contract (as occurred here), and Defendants have failed to establish that they paid all individuals the correct amount. For these reasons, and as set forth below, Defendant's motion should be denied.

**I.    BACKGROUND**

When the parties decided to stay the litigation and focus their efforts on resolution, one of the primary issues to be negotiated was the scope of the settlement class. Because the class asserted by Plaintiffs included multiple job titles that performed care coordination duties, the parties

---

[1] As discussed in Plaintiffs' Motion to Strike (ECF 109), Defendants' motion was filed over a week beyond the deadline set by the Court and should be rejected for that reason alone.

decided to limit the class by excluding a single job title—the "Case Manager RN" position. Exhibit A - Declaration of Travis M. Hedgpeth, ¶ 4.[2] Indeed, on May 18, 2022, Plaintiffs' counsel noted in an email that, based on Defendants' counsel's estimates regarding the number of individuals in the position, Plaintiffs were amenable to leaving that position out for settlement purposes. *See* Attachment 1 to Hedgpeth Decl. (May 18, 2022 email from Travis Hedgpeth). This was the only limitation on the settlement class. On May 22, 2022, Defendants' counsel responded, noting that Defendants were open to the proposal. *See* Attachment 2 to Hedgpeth Decl. (May 22, 2022 email from Defendants' counsel). Following an in-person meeting by counsel, the parties agreed to a settlement class that excluded only the Case Manager RN position. Hedgpeth Decl., ¶ 5. This agreement is confirmed in another email from Plaintiffs' counsel to Defendants' counsel on June 3, 2022. *See* Attachment 3 to Hedgpeth Decl. (June 3, 2022 email from Travis Hedgpeth).

Following the agreement to stay the case, Defendants produced class data for approximately 240 individuals. Hedgpeth Decl. ¶ 6. This data, which included biweekly pay data for each individual, was to be used to calculate damages in advance of the settlement conference. *Id.* ¶ 7. Indeed, Plaintiffs created a damage model using the data, shared the model with Defendants, and used it throughout settlement negotiations. *Id.* ¶ 8. Additionally, once a settlement amount had been agreed upon, the class data was used to create the list of "putative class members" that would be attached to the settlement agreement. *Id.* ¶ 9.

Throughout the above process, Plaintiffs reasonably believed that the class data included (1) all care coordinators (except for the Case Manager RNs) and (2) all workweeks for each

---

[2] Defendants' discussion of how the parties arrived at the positions to be included in the settlement class (*see* Motion to Enforce Settlement Agreement, p. 2) is simply incorrect. Notably, Defendants fail to support these statements (or any factual statements in their motion) with citations to a declaration or to written communications between the parties.

individual on the list.[3] However, as discussed in Plaintiffs' Motion for Sanctions, almost immediately after the settlement notices were mailed out, both the settlement administrator and Plaintiffs' counsel began receiving calls from individuals who believed they should have been included in the settlement, but did not receive a notice. *See* Mtn. for Sanctions (ECF 104), p. 3. When this was brought to Defendants' attention, Defendants' counsel responded by stating that all of the individuals: (1) were hired after January 1, 2016, and therefore executed an enforceable arbitration agreement; (2) were employed as registered nurses ("RNs") or licensed practical nurses ("LPNs"); or (3) were not in Defendants' records as current or former employees. *Id*. Plaintiffs' counsel pointed out that the agreement was that all individuals would be included except those that worked specifically in the Case Manager RN position and that there had been no additional exceptions based on hire date, participation in an arbitration agreement, or nursing licensure. *Id*. Moreover, Defendants' explanation regarding the excluded individuals was inconsistent with the class list, which included numerous individuals that were hired after January 1, 2016. *Id*. Not only that, but Defendants have failed to provide any evidence that these individuals—and any others that were excluded from the class data—signed arbitration agreements. Hedgpeth Decl. ¶ 10. Plaintiffs' counsel asked Defendants' counsel to provide copies of the arbitration agreements on November 29, 2023, but nearly three months later, Defendants still have not done so. *See* Attachment 4 to Hedgpeth Decl. (November 29, 2023 email from Travis Hedgpeth).

Not only did Defendants improperly exclude numerous individuals from the class data, it was also discovered that even the data for the individuals on the list was incomplete. *See* Motion for Sanctions (ECF 104), p. 5. Plaintiffs' counsel were contacted by an individual on the list who believed her settlement allocation was wrong. *Id*. She was correct. The data provided by

---

[3] Plaintiffs' belief was reasonable, as this is exactly what Defendants had agreed to provide.

Defendants cut off multiple years of her tenure with the company, resulting in her award being cut from $38,092.72 to $16,321.84. *Id.* Although Defendants claim to have performed a search of their records and to have only found two other individuals with the same issue, they have provided no means for Plaintiffs or the Court to verify that claim. *Id.*

## II.  ARGUMENT

In support of their motion, Defendants argue that (1) Defendants' agreement to provide class data for *all* care coordinators (except for Case Manager RNs) is inadmissible parole evidence and (2) Defendants have satisfied their obligations under the settlement agreement. Both statements are incorrect.

First, as Defendants correctly note, the settlement agreement must be interpreted under New Mexico state law. As established by the Supreme Court of New Mexico, "parole evidence is admissible to show any misrepresentations that induced the parties to contract, whether they are fraudulent, negligent, or innocent." *Wilburn v. Stewart*, 1990-NMSC-039, ¶ 10, 110 N.M. 268, 270, 794 P.2d 1197, 1199 (citing *Maine v. Garvin*, 76 N.M. 546,550-51, 417 P.2d 40, 43 (1966)). The conversations and emails between counsel clearly establish that the only exclusion to the settlement class was the Case Manager RN position. By excluding additional individuals without telling Plaintiffs, Defendants clearly misrepresented the scope of the class data they provided—data that Defendants knew would be used to calculate damages for settlement purposes.

Second, Defendants did not even provide correct payments to the individuals that *were* on the list. At least three people on the list had their allocations cut by more than 50% because Defendants failed to provide their correct tenures. The only reason this error was caught is that one individual happened to notice that her allocation was less than other co-workers with similar tenures and happened to have written evidence of her actual start date with the company.

Defendants have committed so many egregious errors throughout this settlement process, they cannot be taken at their word that they have identified all other errors. This is especially true given that it is in Defendants' interest *not* to find additional errors. The only way for Defendants to demonstrate that they have, in fact, paid everyone the correct amount and satisfied their obligations under the settlement agreement is for Defendants to produce the full class data, with names and contact information,[4] and for all individuals to be contacted to confirm their tenures with the company. Unlike other class actions with thousands or tens of thousands of class members, there are only 239 individuals that received class notice here, and the cost to confirm their tenures would be minimal.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Enforce Settlement Agreement.

RESPECTFULLY SUBMITTED this 21st day of March, 2023.

THE HEDGPETH LAW FIRM, PC

*/s/   Travis M. Hedgpeth*

Travis M. Hedgpeth
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Blvd., Suite 510
Houston, TX 77056
(512) 417-5716
travis@hedgpethlaw.com

Jack Siegel
jack@siegellawgroup.biz
Texas Bar No. 24070621
SIEGEL LAW GROUP PLLC
4925 Greenville Avenue, Suite 600
Dallas, Texas 75206

---

[4] Part of the relief requested in Plaintiffs' Motion for Sanctions is an order compelling Defendants to produce complete class data for the agreed-upon settlement class.

(214) 790-4454

J. Derek Braziel
jdbraziel@l-b-law.com
Texas Bar No. 00793380
BRAZIEL DIXON, LLP
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
(214) 749-1400 (Telephone)
(214) 749-1010 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**